# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SEMERAK, Individually and On Behalf of All Others Similarly Situated<br><br>        Plaintiff,<br><br>   v.<br><br>VNET GROUP, INC., JOSH SHENG CHEN, JIE DONG. SAMUEL SHEN, and TIM CHEN,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Michael Semerak ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by VNET Group, Inc. ("VNET" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by VNET; and (c) review of other publicly available information concerning VNET.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired VNET securities between April 8, 2022 and February 15, 2023 inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      VNET is a private internet and data center service provider which operates throughout China. The Company provides hosting and related services, including Data Center services, cloud services, and Virtual Private Network ("VPN") services through which customers can connect to the internet in China. VNET is a holding company with operations primarily conducted by its subsidiaries and variable interest entities ("VIE") and VIE subsidiaries.

3.      As of February 28, 2022, the Company's co-founder, Defendant Josh Sheng Chen, beneficially owned approximately 78.52 million VNET shares individually and through his sole ownership of certain companies, including GenTao Capital Limited ("GenTao") and Sunrise Corporate Holding Ltd. ("Sunrise"). On August 19, 2021, he and his companies entered into a $50.25 million margin loan facility with Bold Ally (Cayman) Limited ("Bold Ally"), pledging all

1

of his shares of GenTao, Sunrise, and Beacon Capital Group Inc. as collateral, thus effectively pledging a significant percentage of his VNET shares as collateral (the "Facility Agreement").

4.    On February 13, 2023, before the market opened, Bold Ally announced it would exercise its rights under the Facility Agreement following a default by GenTao and was entitled to 48,515,634 Class A ordinary shares (in the form of 8,085,939 American depositary shares, or "ADSs" or "shares") and 27,757,992 Class B ordinary shares of the Company.

5.    On this news, the Company's share price fell $0.20, or 3.2% on February 13, 2023, on unusually heavy trading volume. The Company's share price continued to decline by $1.09, or 17.8%, over the next consecutive trading session to close at $5.02 per share on February 14, 2023, on unusually heavy trading volume.

6.    Then, on February 15, 2023, before the market opened, VNET disclosed that the board of directors had approved and authorized the issuance of up to 555,000 newly created Class D ordinary shares to the Executive Chairman of the Board, and that these shares would be granted a 500-to-1 vote per share power. The Company stated this measure was required in order to "protect the Company's interests and continued stability."

7.    On this news, the Company's share price fell $0.10, or 2%, to close at $4.92 per share on February 15, 2023, on unusually heavy trading volume.

8.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that GenTao was experiencing financial difficulties and was at risk of defaulting on the Facility Agreement; (2) that, as a result, there was a substantial likelihood that Bold Ally would acquire Defendant Sheng Chen's significant ownership stake in VNET; (3) that, to restore Defendant Sheng Chen's voting interest in VNET, the Company would issue newly created shares to Defendant Sheng Chen,

diluting investors' interest; (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Michael Semerak, as set forth in the accompanying certification, incorporated by reference herein, purchased VNET securities during the Class Period, and suffered

damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant VNET is incorporated under the laws of the Cayman Islands with its principal executive offices located in Beijing, China. VNET's ADSs or shares trade on the NASDAQ under the symbol "VNET."

16.     Defendant Josh Sheng Chen ("Sheng Chen") is a co-founder of the Company and served as the Executive Chairman of the Company's Board at all relevant times.

17.     Defendant Jie Dong ("Dong") has been the Company's Chief Executive Officer ("CEO") since September 2022. He was previously the president of the Company and CEO of VNET Capital from June 2022 until September 2022.

18.     Defendant Samuel Shen ("Shen") was the Company's CEO from September 2020 until September 2022.

19.     Defendant Tim Chen ("Chen") was the Company's Chief Financial Officer ("CFO") at all relevant times.

20.     Defendants Sheng Chen, Dong, Shen and Chen (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the

public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     VNET is a private internet and data center service provider which operates throughout China. The Company provides hosting and related services, including data center services, cloud services, and business VPN services through which customers can connect to the internet in China. VNET is a holding company with operations primarily conducted by its subsidiaries, VIE, and VIE subsidiaries.

22.     As of February 28, 2022, the Company's co-founder, Defendant Josh Sheng Chen, beneficially owned approximately 78.52 million VNET shares individually and through his sole ownership of certain companies, including GenTao Capital Limited ("GenTao") and Sunrise Corporate Holding Ltd. ("Sunrise"). On August 19, 2021, he and his companies entered into a $50.25 million margin loan facility with Bold Ally (Cayman) Limited ("Bold Ally"), pledging all of his shares of GenTao, Sunrise, and Beacon Capital Group Inc. as collateral, thus effectively pledging a significant percentage of his VNET shares as collateral (the "Facility Agreement").

### Materially False and Misleading

### Statements Issued During the Class Period

23.     The Class Period begins on April 8, 2022. On that day, Defendant Sheng Chen filed Form Schedule 13G stating that he had pledged all 78,582,777 shares beneficially owned by him as collateral for the Facility Agreement dated August 19, 2021:[1]

(1) Representing (i) 48,515,635 Class A ordinary shares held by GenTao Capital Limited ("GenTao"), (ii) 19,670,117 Class B ordinary shares held by Fast Horse Technology Limited ("Fast Horse"), (iii) 8,087,875 Class B ordinary shares held by Sunrise Corporate Holding Ltd. ("Sunrise"), (iv) four Class A ordinary shares,

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

769,486 Class B ordinary shares and 60,000 Class C ordinary shares held by Personal Group Limited ("Personal Group"), and (v) 1,479,660 Class A ordinary shares issuable upon vesting of Mr. Sheng Chen's restricted share units within 60 days. Mr. Sheng Chen is the sole and direct shareholder of GenTao, Fast Horse, Sunrise and Personal Group and may be deemed to have beneficial ownership of the shares held by them.

*     *     *

GenTao, together with Beacon, Fast Horse and Sunrise (the "Corporate Guarantors") and Mr. Sheng Chen (the "Personal Guarantor"), entered into a ***Facility Agreement dated as of August 19, 2021*** (the "Facility Agreement") with Bold Ally (Cayman) Limited (the "Lender"). Each of GenTao and the Corporate Guarantors entered into Cayman Equitable Share Mortgages dated as of August 19, 2021 (the "Closing Date") with the Lender, ***pursuant to which each of GenTao and the Corporate Guarantors pledged on the Closing Date all of the Class A Ordinary Shares and Class B Ordinary Shares owned by them as collateral to secure repayment of amounts outstanding under the Facility Agreement,*** and may be required to post additional collateral in certain circumstances (the "Cayman Equitable Share Mortgages"). Mr. Sheng Chen entered into British Virgin Islands Equitable Share Mortgages dated as of the Closing Date with the Lender, pursuant to which Mr. Sheng Chen pledged on the Closing Date all of the British Virgin Islands shares of GenTao, Beacon and Sunrise as collateral to secure repayment of amounts outstanding under the Facility Agreement (the "BVI Equitable Share Mortgages" and together with the Facility Agreement and the Cayman Equitable Share Mortgages, the "Facility Documentation"). As of the date of this statement, the BVI Equitable Share Mortgages for Beacon and Sunrise have been released.

As of the Closing Date, GenTao has borrowed an aggregate of $50.25 million under the Facility Agreement. Pursuant to the Cayman Equitable Share Mortgages, GenTao and the Corporate Guarantors have collectively pledged, as of the date of this statement, 48,515,635 Class A Ordinary Shares and 27,757,992 Class B Ordinary Shares to secure borrowings under the Facility Agreement.

***The loan matures on or about August 19, 2022. The Facility Agreement provides GenTao with an option to refinance the loan and extend the maturity date for up to two years. Upon the occurrence of certain events that are customary for this type of loan***, the Lender may exercise its rights to require GenTao to pre-pay the loan proceeds, post additional collateral, or foreclose on, and dispose of, the pledged Class A Ordinary Shares, Class B Ordinary Shares and pledged British Virgin Islands shares of GenTao in accordance with the Facility Documentation.

In connection with the entry into the Facility Documentation described above, the Issuer entered into an acknowledgement letter with the Lender pursuant to which the parties have agreed to, among other things, take specified administrative actions in connection with any transfer of Class A Ordinary Shares or Class B Ordinary Shares by the Lender upon an exercise of remedies under the Facility Documentation.

24. On April 26, 2022, the Company filed its annual report on Form 20-F for the period ended December 31, 2021 with the SEC (the "2021 20-F"). The 2021 20-F described "with respect to the beneficial ownership of our ordinary shares, as of February 28, 2022, by: each of our directors and executive officers; and each person known to us to own beneficially more than 5.0% of our ordinary shares." Specifically, it stated that Defendant Sheng Chen beneficially owned 8.8% of shares, including the 5.5% of shares owned by GenTao. Moreover, the 2021 20-F stated:

> Consists of (i) **48,515,635** Class A ordinary shares held by GenTao Capital Limited ("GenTao)", a British Virgin Islands company solely owned by Mr. Chen; (ii)19,670,117 Class B ordinary shares held by Fast Horse Technology Limited ("Fast Horse"), a British Virgin Islands company solely owned by Mr. Chen; (iii) 8,087,875 Class B ordinary shares held by Sunrise Corporate Holding Ltd. ("Sunrise"), a British Virgin Islands company solely owned by Mr. Chen; (iv) 60,000 Class C ordinary shares, 769,486 Class B ordinary shares and four Class A ordinary shares held by Personal Group Limited, a British Virgin Islands company solely owned by Mr. Chen; and (v) 1,479,660 Class A ordinary shares upon vesting of Mr. Chen's restricted share units within 60 days of February 28, 2022. ***Mr. Sheng Chen, as a personal guanrantor, together with GenTao, Beacon Capital Group Inc. ("Beacon"), Fast Horse and Sunrise, entered into a Facility Agreement dated as of August 19, 2021 (the "Facility Agreement") with Bold Ally (Cayman) Limited ("Bold Ally"). Mr. Sheng Chen entered into British Virgin Islands Equitable Share Mortgages dated as of August 19, 2021 with Bold Ally, pursuant to which Mr. Sheng Chen pledged on August 19, 2021 all of the British Virgin Islands shares of GenTao, Beacon and Sunrise as collateral to secure repayment of amounts outstanding under the Facility Agreement.***

25. The 2021 20-F purported to disclose the following risks with respect to its ADSs:

**Risks Related to Our ADS**

- The market price of our ADSs has fluctuated and may continue to be volatile, which could result in substantial losses to holders of our ADSs.

- Our directors and employees may face claims and lawsuits as a result of their position in other companies, which may also harm our reputation.

- Our triple-class voting structure will limit your ability to influence corporate matters and could discourage others from pursuing any change of control transactions that holders of our Class A ordinary shares and ADSs may view as beneficial.

- Future sales of a substantial number of our ADSs in the public market, or the perception that these sales could occur, could cause the price of our ADSs to decline.

- We are exempt from certain corporate governance requirements of Nasdaq and we intend to rely on certain exemptions.

- We are a foreign private issuer within the meaning of the rules under the U.S. Exchange Act, and as such we are exempt from certain provisions applicable to U.S. domestic public companies.

26. The above statements identified in ¶¶ 23-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that GenTao was experiencing financial difficulties and was at risk of defaulting on the Facility Agreement; (2) that, as a result, there was a substantial likelihood that Bold Ally would acquire Defendant Sheng Chen's significant ownership stake in VNET; (3) that, to restore Defendant Sheng Chen's voting interest in VNET, the Company would issue newly created shares to Defendant Sheng Chen, diluting investors' interest; (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

27. On February 13, 2023, before the market opened, Bold Ally announced in a press release that GenTao had defaulted on the margin loan, and Bold Ally had in turn enforced the terms of the Facility Agreement. The press release stated:

> Following the occurrence of a ***default by GenTao*** Capital Limited (the "Borrower"), a shareholder of VNET Group, Inc. (the "Company") (NASDAQ: VNET), ***under a US$50,250,000 margin loan facility (the "Facility"), Bold Ally (Cayman) Limited (the "Lender") has exercised its rights with respect to the collateral securing the Borrower's repayment obligations under the Facility. A total of 48,515,634 Class A ordinary shares (in the form of 8,085,939 American depositary shares) and 27,757,992 Class B ordinary shares of the Company have been pledged to secure the Facilit***y.

> The Borrower is wholly owned by Mr. Chen Sheng, also known as Josh Sheng Chen ("Mr. Chen"), the Chairman of the Company's Board of Directors. The Facility is full recourse to Mr. Chen.

Under the Facility, the Lender has the right to convert the pledged Class B ordinary shares into Class A ordinary shares and/or deposit such Class A ordinary shares in exchange for American depositary shares. There are no applicable lock-up restrictions in respect of the Class A ordinary shares or the American depositary shares of the Company (collectively, the "Securities"). Assuming that all Securities pledged under the Facility were sold, Mr. Chen's voting interest in the Company would significantly decrease.

28.     On this news, the Company's share price fell $0.20, or 3.2% on February 13, 2023, on unusually heavy trading volume. The Company's share price continued to decline by $1.09, or 17.8%, over the next trading session to close at $5.02 per share on February 14, 2023, on unusually heavy trading volume.

29.     Then, on February 15, 2023, before the market opened VNET announced in a press release that its Board had authorized the issuance of up to 555,000 newly created Class D ordinary shares to Defendant Sheng Chen, conditioned upon the conversion of his pledged Class B ordinary shares into Class A ordinary shares by any person not an affiliate of Mr. Sheng Chen. The Company stated that the "issuance of the newly created Class D ordinary shares is an initiative by the Board to protect the Company's interests and continued stability." The Class D shares "shall be entitled to 500 votes per share on all matters submitted to shareholder vote."

30.     On this news, the Company's share price fell $0.10, or 2%, to close at $4.92 on February 15, 2023, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired VNET securities between April 8, 2022 and February 15, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, VNET's ADS actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of VNET ADSs were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by VNET or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of VNET; and

10

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

36.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.      The market for VNET's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, VNET's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired VNET's securities relying upon the integrity of the market price of the Company's securities and market information relating to VNET and have been damaged thereby.

38.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of VNET's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about VNET's business, operations, and prospects as alleged herein.

39.      At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about VNET's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.    During the Class Period, Plaintiff and the Class purchased VNET's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding VNET, their control over, and/or receipt and/or modification of VNET's allegedly materially misleading misstatements and/or their

associations with the Company which made them privy to confidential proprietary information concerning VNET, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.    The market for VNET's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, VNET's securities traded at artificially inflated prices during the Class Period.  On April 11, 2022, the Company's share price closed at a Class Period high of $7.00 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of VNET's securities and market information relating to VNET and have been damaged thereby.

44.    During the Class Period, the artificial inflation of VNET's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about VNET's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of VNET and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.    At all relevant times, the market for VNET's securities was an efficient market for the following reasons, among others:

(a)      VNET shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, VNET filed periodic public reports with the SEC and/or the NASDAQ;

(c)      VNET regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      VNET was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.      As a result of the foregoing, the market for VNET's securities promptly digested current information regarding VNET from all publicly available sources and reflected such information in VNET's share price.  Under these circumstances, all purchasers of VNET's securities during the Class Period suffered similar injury through their purchase of VNET's securities at artificially inflated prices and a presumption of reliance applies.

47.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of VNET who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

49.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase VNET's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for VNET's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about VNET's financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of VNET's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about VNET and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing VNET's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of VNET's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired VNET's securities during the Class Period at artificially high prices and were damaged thereby.

57. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that VNET was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their VNET securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## **SECOND CLAIM**

### **Violation of Section 20(a) of The Exchange Act**

### **Against the Individual Defendants**

60.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.      Individual Defendants acted as controlling persons of VNET within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.      In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.      As set forth above, VNET and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other

members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 26, 2023

*/s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

### SWORN CERTIFICATION OF PLAINTIFF
### VNET GROUP, INC. (VNET) SECURITIES LITIGATION

I, Michael Semerak, certify that:

1.　　I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.　　I did not purchase the VNET Group, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.　　I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.　　My transactions in VNET Group, Inc. securities during the period set forth in the Complaint are as follows:

　　　(See attached transactions)

5.　　I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.　　I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


_Oct 30, 2023_
Date

_____
Michael Semerak

**Michael Semerak's Transactions in VNET Group, Inc. (VNET)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/17/2022 | Bought | 2,000 | $5.9390 |
| 5/25/2022 | Sold | -2,000 | $4.6400 |
| 9/28/2022 | Bought | 110 | $5.7300 |
| 9/28/2022 | Bought | 1,229 | $5.7290 |
| 9/28/2022 | Sold | -1,359 | $5.8000 |
| 10/4/2022 | Sold | -2,000 | $5.7700 |
| 10/4/2022 | Sold | -2,000 | $5.7000 |
| 10/4/2022 | Bought | 284 | $5.6600 |
| 10/4/2022 | Bought | 1,716 | $5.6690 |
| 10/4/2022 | Bought | 2,000 | $5.6690 |
| 10/5/2022 | Bought | 362 | $5.5000 |
| 10/5/2022 | Bought | 1,461 | $5.4990 |
| 10/5/2022 | Bought | 177 | $5.4990 |
| 10/11/2022 | Sold | -2,000 | $4.6500 |
| 10/31/2022 | Bought | 2,000 | $4.1000 |
| 11/1/2022 | Sold | -2,000 | $4.5000 |
| 11/30/2022 | Sold | -2,000 | $5.0000 |
| 11/30/2022 | Bought | 2,000 | $4.9000 |
| 12/1/2022 | Bought | 2,000 | $4.7800 |
| 12/2/2022 | Sold | -2,000 | $5.0000 |
| 12/21/2022 | Sold | -2,000 | $5.2000 |
| 12/22/2022 | Sold | -2,000 | $5.5000 |
| 12/28/2022 | Sold | -2,000 | $5.5500 |
| 1/4/2023 | Bought | 920 | $6.1500 |
| 1/4/2023 | Bought | 828 | $6.1000 |
| 1/4/2023 | Bought | 1,748 | $6.0000 |
| 1/5/2023 | Sold | -2,000 | $6.1000 |
| 1/5/2023 | Bought | 2,000 | $5.9999 |
| 1/11/2023 | Bought | 1,800 | $5.9800 |
| 1/11/2023 | Sold | -1,800 | $6.1000 |
| 1/12/2023 | Bought | 2,000 | $6.0000 |
| 1/12/2023 | Sold | -2,000 | $6.1501 |
| 1/13/2023 | Sold | -2,000 | $6.0500 |
| 1/13/2023 | Bought | 2,000 | $5.9000 |
| 1/13/2023 | Bought | 2,000 | $6.0000 |
| 1/17/2023 | Bought | 2,000 | $5.9000 |
| 1/17/2023 | Sold | -2,000 | $6.1000 |
| 1/17/2023 | Sold | -2,000 | $6.2000 |
| 1/31/2023 | Sold | -2,000 | $6.0200 |
| 1/31/2023 | Bought | 2,000 | $6.0000 |
| 2/14/2023 | Sold | -2,000 | $5.3500 |

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/14/2023 | Bought | 2,000 | $5.4500 |
| 2/14/2023 | Sold | -2,000 | $5.0507 |
| 2/14/2023 | Bought | 200 | $4.3300 |
| 2/14/2023 | Bought | 1,800 | $4.3400 |
| 2/14/2023 | Bought | 2,000 | $5.0000 |
| 2/14/2023 | Sold | -2,000 | $4.6400 |
| 2/14/2023 | Bought | 2,000 | $4.9500 |