**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
                                                              :
                                                              :
IN RE VNET GROUP, INC. SECURITIES : No. 1:23-cv-11187 (DEH)
LITIGATION                                                    :
                                                              :
                                                              :
------------------------------------------------------------- x

**DEFENDANT TIM CHEN'S ANSWER**
**TO PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Lead Plaintiff Wong Tan ("Lead Plaintiff") and Additional Plaintiff, Michael Semerak (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' amended complaint against defendants, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings, press releases, earnings presentations, conference call transcripts, and other information prepared for investors by VNET Group, Inc. ("VNET" or the "Company"), as well as media and analyst reports about the Company. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**ANSWER:** Defendant Tim Chen ("Defendant" or "Mr. Tim Chen"), by his undersigned counsel, respectfully submits this answer to the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"). Mr. Tim Chen denies all of the Complaint's allegations unless expressly admitted herein. The non-numbered paragraph of the Complaint reflects Plaintiffs' characterization of their own allegations for which no response is required. To the extent a response is required, Mr. Tim Chen denies such allegations, except where Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the non-numbered paragraph of the Complaint to the extent that they relate to persons other than Mr. Tim Chen. To the extent any headings in the Complaint contain any factual allegations or legal conclusions, Mr. Tim Chen denies those allegations or legal conclusions. Mr. Tim Chen answers the allegations contained in the like-numbered paragraphs of the Complaint as follows:

2

**NATURE OF THE ACTION**

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired VNET American depositary shares ("ADSs" or "VNET securities") between March 23, 2022, and February 17, 2023 inclusive (the "Class Period").[1] Plaintiffs pursue claims against the Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**ANSWER:**   Mr. Tim Chen denies the allegations contained in Paragraph 1 of the

Complaint, except admits that Plaintiffs purport to bring this action against VNET, Mr. Josh Sheng

Chen ("Mr. Chen"), Mr. Samuel Shen ("Mr. Shen"), Mr. Jie Dong ("Mr. Dong") and Mr. Tim

Chen.  Mr. Tim Chen denies that he has violated any law or that Plaintiffs have suffered any

damages.

2.      VNET is an internet and data center service provider which operates throughout China. The Company provides hosting and related services, including data center services, cloud services, and virtual private network ("VPN") services through which customers can connect to the internet in China. VNET is a holding company with operations primarily conducted by its subsidiaries and variable interest entities and their subsidiaries.

**ANSWER:**   Mr. Tim Chen admits the allegations contained in Paragraph 2 of the

Complaint.

3.      The Company was founded by Defendant Josh Sheng Chen ("Sheng Chen"). In addition to VNET, Sheng Chen also founded multiple personal holding companies of which he is the sole owner and operator, including GenTao Capital Limited ("GenTao"), Fast Horse Technology Limited ("Fast Horse"), Sunrise Corporation Holding Ltd. ("Sunrise"), Personal Group Limited ("Personal Group"), and Beacon Capital Group Inc. ("Beacon").

**ANSWER:**   Mr. Tim Chen denies the allegations contained in Paragraph 3 of the

Complaint, except admits that Mr. Chen was one of VNET's co-founders and is the sole owner

and operator of multiple personal holding companies, including GenTao Capital Limited

("GenTao"), Fast Horse Technology Limited ("Fast Horse"), Sunrise Corporation Holding Ltd.

---

[1]     ADSs are shares in foreign companies held by U.S. depositary banks and traded on major U.S. exchanges like any domestic stock.

3

("Sunrise"), Personal Group Limited ("Personal Group"), and Beacon Capital Group Inc. ("Beacon").

4.      VNET (formerly known as 21Vianet, Inc.) went public in 2011, offering ADSs, each of which represent six of its Class A ordinary shares on the Nasdaq Global Select Market ("NASDAQ").[2]

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 4 of the Complaint, except admits that VNET was formerly known as 21Vianet Group, Inc., went public in 2011 and offers ADSs each of which represent six of its Class A ordinary shares on the Nasdaq Global Select Market ("NASDAQ").

5.      Between going public and the beginning of the Class Period, Sheng Chen retained a significant stake in VNET (both directly and through his personal holding companies), controlled its Board of Directors for which he served as Executive Chairman, and maintained substantial voting power. For example, in 2021, GenTao held 48,515,635 Class A ordinary shares in VNET; Fast Horse held 19,670,117 Class B ordinary shares in VNET; Sunrise held 8,087,875 Class B ordinary shares in VNET; and Personal Group held four Class A ordinary shares, 769,486 Class B ordinary shares and 60,000 Class C ordinary shares in VNET. Just prior to the Class Period, Sheng Chen owned approximately 8.8% of total outstanding ordinary shares but had approximately 28.6% of the aggregate voting power due to his ownership of supra-voting share classes.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 5 of the Complaint, except admits that Mr. Chen served as Executive Chairman of VNET, and owned approximately 8.8% of total outstanding ordinary shares and had approximately 28.8% of the aggregate voting power as of February 28, 2022.  Mr. Tim Chen refers to VNET's Form 20-F for the year ended December 31, 2021, ("VNET 2021 20-F") for its complete and accurate recitation of VNET's capital structure and outstanding shares.  Mr. Tim Chen denies any paraphrasing,

---

[2]    Share "classes", e.g., Class A/B/C/D shares, etc., are a way of assigning different rights to different stockholders. They can address issues such as voting authority, dividends and rights to a company's assets and capital.

summarizing or characterization of the VNET 2021 20-F and any factual inferences or legal conclusions made by Plaintiffs based on it.

6.      On August 19, 2021, Sheng Chen — through GenTao — entered into a Facility Agreement to obtain a $50.25 million loan from a company called Bold Ally (Cayman) Limited ("Bold Ally"). Under the Facility Agreement, which was known to VNET and its senior executives at all relevant times, Sheng Chen personally guaranteed the loan and pledged all of his shares in VNET and those held by his personal holding companies as collateral, which consisted of approximately 78.52 million Class A, Class B, and Class C shares as of February 28, 2022.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 6 of the Complaint, except admits that on August 19, 2021, Mr. Chen, GenTao, Beacon, Fast Horse and Sunrise entered into a $50.25 million loan facility agreement (the "Facility Agreement") with Bold Ally (Cayman) Limited ("Bold Ally").  Mr. Tim Chen refers to the Facility Agreement for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

7.      The Facility Agreement had an early termination clause which stated that if VNET's securities' share price fell below a certain price for two (2) consecutive business days, Bold Ally could cancel the loan and demand full payment on the loan within ten (10) business days (the "Early Termination Provision"). The Facility Agreement also contained a provision under which it would be an event of default if a calculation of certain pledged Class A shares fell below a threshold of $63,000,000, which would occur if the ADS share price dropped below approximately $11.80 (an "Event of Default"). As part of Sheng Chen's loan facility, VNET entered into an "Issuer Acknowledgment Letter" with Bold Ally, "pursuant to which the parties have agreed to, among other things, take specified administrative actions in connection with any transfer of Class A Ordinary Shares or Class B Ordinary Shares by the Lender upon an exercise of remedies under the Facility Documentation."[3]

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 7 of the Complaint, except admits that the Facility Agreement contains provisions regarding early

---

[3]    *See* sec.gov/Archives/edgar/data/1541680/000110465923023288/tm236084d1_sc13da.htm.

termination and default.  Mr. Tim Chen refers to the Facility Agreement for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement, and any factual inferences or legal conclusions made by Plaintiffs based on it.  Mr. Tim Chen further admits that on September 10, 2021, VNET and Bold Ally entered into an issuer acknowledgement letter (the "Issuer Acknowledgement Letter").  Mr. Tim Chen refers to the Issuer Acknowledgement Letter for its complete and accurate contents.  Mr. Tim Chen further refers to Mr. Chen's February 17, 2023, Schedule 13D ("Sheng Chen February 17, 2023, Schedule 13D") for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Issuer Acknowledgement Letter and Sheng Chen February 17, 2023, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on them.

8.    In November and December 2021, the price of VNET ADSs dropped precipitously:



**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 8 of the Complaint.

9.    This caused both the Early Termination Provision and the Event of Default provisions in the Facility Agreement to trigger.

**ANSWER:** The allegations contained in Paragraph 9 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

10. On November 22, 2021, Bold Ally notified Gen Tao and Sheng Chen that its margin under the Facility Agreement was deficient and asked for more collateral to be deposited. According to a subsequent standstill letter acknowledged by Sheng Chen, see ¶12, below, that margin request was not satisfied. As a result, Sheng Chen and Gen Tao remained in default of the Facility Agreement throughout the Class Period, which Defendants hid from investors.

**ANSWER:** Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11. Exacerbating the grave problems caused by the concealed default, in early 2022, VNET entered into hundreds of millions of dollars' worth of convertible debt and other financings which contained provisions requiring that Sheng Chen maintain his level of control within VNET ("Change of Control clauses"). When these financings were disclosed to investors, Defendants concealed that Sheng Chen's holdings were already in peril because of his then-existing breaches of Facility Agreement covenants which allowed Bold Ally to seize his shares. This known, actual risk was not disclosed to investors.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 11 of the Complaint, except admits that in early 2022, VNET entered into certain debt financing arrangements. Mr. Tim Chen denies that any disclosure of those agreements was false or misleading.

12. On April 6, 2022, Sheng Chen, his personal holding companies, and Bold Ally entered into a standstill agreement which: (a) acknowledged that Sheng Chen was notified in November 2021 of his default of the Facility Agreement and the consequences resulting therefrom; (b) acknowledged that an Early Termination event had occurred in late 2021; (c) arranged for the transfer of Sheng Chen's pledged shares into Restricted ADSs, so that after the passage of the restriction time under SEC Rule 144, Boldy Ally could sell the ADS shares on the open market; and (d) provided that Bold Ally would not take certain further other actions as a result of the default and Early Termination event. Neither the standstill agreement nor its conditions were disclosed until after the Class Period.

7

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13.    Two days later, Sheng Chen filed with the United States Securities and Exchange Commission a Schedule 13D in which he disclosed and attached for the first time a highly doctored version of the August 2021 Facility Agreement. To ensure that VNET investors would not be able to discover independently that an Early Termination event had already occurred, Sheng Chen replaced the actual trigger price of $8.50 set forth in the version of the Facility Agreement he filed with the United States Securities and Exchange Commission with a series of asterisks:

> **8.3    Mandatory Prepayment – Early Termination**
>
> If an Early Termination Event occurs:
>
> (a)    the Borrower shall promptly notify the Lender upon becoming aware of that event;
>
> (b)    the Lender shall not be obliged to fund any Utilisation; and
>
> (c)    the Lender shall be entitled to, by notice to the Borrower, cancel the Commitments and declare that all outstanding Loan(s), together with accrued interest and all other amounts accrued or owing to the Lender under the Finance Documents (including the Exit Fees (Termination)), shall be due and payable within ten (10) Business Days from the date of such notice to the Borrower.
>
> ---
> 26
> ---
>
> For the purpose of this Agreement, **"Early Termination Event"** means the ADS Price and/or the Disrupted ADS Price (as applicable) is lower than US$***** (subject to adjustment for share splits, share consolidations or other similar events in the same manner as set forth in the definition of Cap Price) for two (2) consecutive Trading Days.

Likewise, he obscured the entire "event of default" clause (21.16) by replacing the text in the disclosed version of the Facility Agreement with a series of asterisks:



> **21.15    Default under other Finance Document**
>
> An event occurs which is called an "event of default" under any Finance Document other than this Agreement.
>
> **21.16    *********************************

Sheng Chen concealed this crucial provision because it, too, had already triggered. The language he removed provided an additional Event of Default if the collateral value (i.e., the aggregate of the market value of collateral shares) fell below a pre-determined amount. Collateral shares were defined as: "(a) the ADSs of [VNET] which are, at that time, registered by the Depositary in the name of the Lender for the benefit of the Borrower (or the relevant Obligor) and subject to Transaction Security not prohibited by the Depositary and in form and substance satisfactory to [Bold Ally] and [Bold Ally] is provided with all documents, notices, other evidence as required under the relevant Security Document(s) and any security confirmations as may be required by [Bold Ally]; and the Class A Shares of [VNET] subject to Transaction Security in form and

substance satisfactory to [Bold Ally] and [Bold Ally] is provided with all documents, notices, other evidence as required under the relevant Security Document(s) and any security confirmations as may be required by [Bold Ally]." The provision required that the referenced collateral stay above a threshold of $63,000,000, which would be violated if the ADS value dropped below approximately $11.80 as it did in late November 2021.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 13 of the Complaint, except admits that Mr. Chen filed a Schedule 13D on April 8, 2022 ("Sheng Chen April 8, 2022, Schedule 13D"). Mr. Tim Chen refers to the Sheng Chen April 8, 2022, Schedule 13D for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen April 8, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

14.    The April 8, 2022 Schedule 13D made no mention that both an Event of Default and an Early Termination event had already occurred, and concealed the fact that Sheng Chen had entered into a standstill agreement only two days earlier to facilitate the transfer of his shares into Restricted ADSs so they could be dumped by Bold Ally as soon as the SEC Rule 144 restriction period lapsed.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint. Mr. Tim Chen refers to the Sheng Chen April 8, 2022, Schedule 13D for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen April 8, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

15.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement on any future Early Termination events thereunder; accordingly, as a result of (i)-(iii), (iv) Bold Ally then had the right to seize Sheng Chen's significant ownership stake in VNET; and due to (iv), (v) VNET was at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a violation so serious that post-Class Period reports indicated it threatened to shut down the entire Company.

9

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 15 of the Complaint.

16.    On February 13, 2023, before the market opened, Bold Ally announced it would exercise its rights under the loan following a default by GenTao and was entitled to 48,515,634 Class A ordinary shares (which Sheng Chen and the Company had caused to be transferred into in the form of 8,085,939 Restricted ADSs)[4] and 27,757,992 Class B ordinary shares of the Company.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 16 of the Complaint.  Mr. Tim Chen refers to the Bold Ally press release dated February 13, 2023, (the "Bold Ally February 13, 2023, Press Release") for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Bold Ally February 13, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

17.    On this news, the VNET's ADS's share price fell $0.20, or 3.17% on February 13, 2023, on unusually heavy trading volume. VNET ADS's share price continued to decline by $1.09, or 17.8%, over the next trading session to close at $5.02 per share on February 14, 2023, again on unusually heavy trading volume.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 17 of the Complaint, except admits that the opening price of VNET ADSs was $6.31 per ADS on February 13, 2023, the closing price was $6.11 per ADS on February 13, 2023, the opening price was $5.94 on February 14, 2023, and the closing price was $5.02 per ADS on February 14, 2023.

18.    Then, on February 15, 2023, before the market opened, Defendants announced that they had taken action to replace the voting interests that Sheng Chen lost when his shares were seized by creating and authorizing the issuance of up to 555,000 newly created Class D ordinary shares to Sheng Chen that carried 500 times the voting power of Class A shares. The Company stated this measure was required in order to "protect the Company's interests and continued stability" in the face of the destabilizing but long-known Facility Agreement violations. This was a direct consequence of Sheng Chen's default on the Facility Agreement.

---

4    Under SEC Rule 144, non-affiliates who receive restricted shares have a six-month holding period before the restriction can be released.  The Issuer Acknowledgment Letter confirmed that Bold Ally was not considered an affiliate of VNET.

10

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 18 of the Complaint, except admits that VNET issued a press release on February 15, 2023 ("VNET February 15, 2023, Press Release"). Mr. Tim Chen refers to the VNET February 15, 2023, Press Release for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET February 15, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

19. On this news, the Company's share price fell $0.33, or 6.3%, to $4.87, before rising slightly to close at $4.92 per share on February 15, 2023, on unusually heavy trading volume. Over the next day, VNET ADS shares dropped again to close at $4.78 on February 16, 2023. Over this two-day period, VNET ADS shares fell $0.42, or 8.07%.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 19 of the Complaint, except admits that the closing price of VNET ADSs was $4.92 per ADS on February 15, 2023, and the closing price was $4.78 per ADS on February 16, 2023.

20. Finally, on February 17, 2023, Sheng Chen filed with the United States Securities and Exchange Commission amended Schedule 13D which acknowledged that VNET knew of the Facility Agreement, signed a letter of acknowledgment, and agreed to take "specified administrative actions" in case Sheng Chen's shares were ever seized; and admitted, for the first time, that (a) Sheng Chen had been notified at least five times before and during the Class Period that he was in default and at risk of having his shares seized before they actually were; and (b) on February 8, 2023, Sheng Chen's shares had been transferred to Bold Ally.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 20 of the Complaint, except admits that Mr. Chen filed the Sheng Chen February 17, 2023, Schedule 13D. Mr. Tim Chen refers to the Sheng Chen February 17, 2023, Schedule 13D for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen February 17, 2023, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

11

21.    In response to the news, over the next two trading days, the Company's ADS share price declined by $0.45, or 9.47%, to a low of $4.3, before closing at $4.57 on February 21, 2023. In total, from February 13, 2023, to February 21, 2023, VNET's ADS share price fell by $2.01, or 31.85%, in response to the disclosure of Sheng Chen's default, Bold Ally's seizure, and the newly created shares.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 21 of the Complaint, except admits that the opening price of VNET ADSs was $6.31 per ADS on February 13, 2023, and the closing price was $4.57 per ADS on February 21, 2023.

22.    As a result of Defendants' wrongful acts and omissions, investors in VNET ADSs not only saw their economic and voting stakes in VNET significantly diluted, but also suffered a precipitous decline in the market value of the Company's securities. Consequently, Plaintiffs and other Class members have suffered significant losses and damages.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 22 of the Complaint.

## JURISDICTION AND VENUE

23.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

**ANSWER:**    The allegations contained in Paragraph 23 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations, but states that the Complaint purports to assert claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

24.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

**ANSWER:**    The allegations contained in Paragraph 24 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations, but admits that the Court has jurisdiction over this action pursuant to the referenced statutes.

12

25.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Pursuant to VNET's most recently filed annual report, as of December 31, 2023, the Company had 182,142,651 shares of common stock outstanding. ET's securities trade on the NASDAQ. Accordingly, there are presumably hundreds, if not thousands of investors in VNET securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

**ANSWER:**    The allegations contained in the first sentence of Paragraph 25 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations, but admits that Plaintiffs allege certain acts and conduct taking place in this District and that there are likely at least some VNET investors that reside in this District.  Mr. Tim Chen further refers to the VNET 2023 20-F for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of that filing and any factual inferences or legal conclusions made by Plaintiffs based on it.

26.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 26 of the Complaint.

## PARTIES

27.    Lead Plaintiff, as set forth in his previously filed Certification (ECF 18-3), which is incorporated by reference herein, purchased or otherwise acquired VNET securities during the Class Period and has been damaged thereby.

**ANSWER:**    Mr. Tim Chen denies that Lead Plaintiff has suffered any damages.  Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Plaintiff Michael Semerak, as set forth in his previously filed Certification (ECF 1), which is incorporated by reference herein, purchased or otherwise acquired VNET securities during the Class Period and has been damaged thereby.

ANSWER:    Mr. Tim Chen denies that Plaintiff Michael Semerak has suffered any damages.  Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Defendant VNET is incorporated under the laws of the Cayman Islands with its principal executive offices located in Beijing, China. VNET's ADSs trade on the NASDAQ under the symbol "VNET."

ANSWER:    Mr. Tim Chen admits the allegations contained in Paragraph 29 of the Complaint.

30.     Defendant Josh Sheng Chen is a co-founder of the Company and served as the Executive Chairman of the Company's Board from the founding of the Company through the present. As Executive Chairman of the Company, Sheng Chen had authority and oversight over VNET's business. Sheng Chen signed VNET's Form 20-F filings with the SEC.[5] Since August 9 2022, Sheng Chen was also a member of the compensation committee of the VNET Board of Directors, which oversees the compensation of VNET's officers, and a member of the nominating and corporate governance committee of the VNET Board of Directors, which oversees the composition and compensation of the VNET Board of Directors. Consequently, Sheng Chen wielded control over VNET's Board of Directors and management. In addition to his positions at VNET, Sheng Chen is also the sole owner and operator of GenTao, Fast Horse, Sunrise, Personal Group, and Beacon.

ANSWER:    Mr. Tim Chen denies the allegations contained in Paragraph 30 of the Complaint, except admits that Mr. Chen is a co-founder of the Company, has served as the Executive Chairman of the Company's board from the founding of the Company through the present and that since August 9, 2022, Mr. Chen was also a member of both the compensation committee of the VNET Board of Directors and of the corporate governance committee of the

---

[5]    SEC Form 20-F is an annual report that SEC rules require for all "foreign private issuers" with listed equity shares on exchanges in the U.S. Form 20-F calls for the submission of an annual report within four months of the end of a company's fiscal year or if the fiscal year-end date changes. See SEC "Topic 6 - Foreign Private Issuers & Foreign Businesses." https://www.sec.gov/corpfin/cf-manual/topic-6

VNET Board of Directors. Mr. Tim Chen further admits that Mr. Chen is the sole owner and operator of holding companies including GenTao, Fast Horse, Sunrise, Personal Group, and Beacon. Mr. Tim Chen refers to the VNET 2021 20-F and VNET's Form 20-F for the year ended December 31, 2022, ("VNET 2022 20-F") and December 31, 2023, ("VNET 2023 20-F") (together, the "VNET 20-Fs") for their complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 20-Fs and any factual inferences or legal conclusions made by Plaintiffs based on them.

31. Defendant Jie Dong ("Dong") was the Company's Chief Executive Officer ("CEO") from September 2022 through the end of the Class Period. He was previously the president of the Company and CEO of VNET Capital from June 2022 until September 2022. As a former executive of VNET Capital and later as CEO of VNET, Dong had access to, and authority and oversight over VNET's business. Dong also spoke to VNET investors in earnings calls about the Company's operations.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 31 of the Complaint, except admits that Mr. Dong was the Company's Chief Executive Officer ("CEO") from September 2022 through the end of the Class Period and was the President of the Company and CEO of VNET Capital from June 2022 to September 2022.

32. Defendant Samuel Shen ("Shen") was the Company's CEO from September 2020 until September 2022. As CEO, Shen had access to, and authority and oversight over, VNET's business. Shen routinely certified filings with the SEC that affirmed that he had reviewed and evaluated VNET's filings with the SEC and concluded that VNET's filings did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[,]" and that "[t]he information contained in [VNET's annual report filed with the SEC] fairly presents, in all material respects, the financial condition and results of operations of the Company." Shen also routinely spoke to VNET investors in earnings calls about the Company's operations.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 32 of the Complaint, except admits that Mr. Shen served as the Company's CEO between September 2020 and September 2022. Mr. Tim Chen refers to the VNET 20-Fs for their complete and accurate

contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 20-Fs and any factual inferences or legal conclusions made by Plaintiffs based on them.

33.    Defendant Tim Chen ("Chen") was the Company's Chief Financial Officer ("CFO") at all relevant times. As CFO, Chen had access to, and authority and oversight over VNET's business. Chen routinely certified filings with the SEC that affirmed that he had reviewed and evaluated VNET's filings with the SEC and concluded that VNET's filings did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[,]" and that "[t]he information contained in the [20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company." Chen also routinely spoke to VNET investors in earnings calls about the Company's operations.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 33 of the Complaint, except admits that he has served as VNET's Chief Financial Officer between May 2021 and July 2023.  Mr. Tim Chen refers to the VNET 20-Fs for their complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 20-Fs and any factual inferences or legal conclusions made by Plaintiffs based on them.

34.    Defendants Sheng Chen, Dong, Shen, and Chen (collectively, the "Individual Defendants"), because of their responsibilities and authority within the Company, controlled the content of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein. Further, Sheng Chen along with VNET participated in a scheme to hide his default of the Facility Agreement from investors and is liable for the scheme pleaded herein.

**ANSWER:**    The allegations contained in Paragraph 34 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen further submits that the scheme liability allegations

contained in Paragraph 34 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required to those allegations. To the extent a response is required, Mr. Tim Chen denies the allegations.

35.    VNET and the Individual Defendants are collectively referred to as "<u>Defendants</u>."

**ANSWER:**    Paragraph 35 of the Complaint reflects Plaintiffs' characterization of their own allegations for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

## SUBSTANTIVE ALLEGATIONS

### I.    VNET History and Business

36.    VNET was founded in 1999 by Josh Sheng Chen, and incorporated in the Cayman Islands, originally under the name AsiaCloud. VNET is a holding company with operations primarily conducted by its subsidiaries. In 2010, VNET transitioned to the data center business with its first self-developed data center opening in 2010. Since then, the Company, through its subsidiaries, has provided hosting and related services, including data center services, cloud services, and business VPN services through which customers can connect to the internet in China. VNET's operation is headquartered in Beijing, and it claims to run more than 50 distributed data centers in more than 30 cities throughout mainland China, with more than 93,000 cabinets, more than 4T port capacity and more than 1T high-speed cloud dedicated lines.

**ANSWER:**    Mr. Tim Chen admits the allegations contained in Paragraph 36 of the Complaint were accurate as of December 31, 2023, except denies that Mr. Chen is the sole founder of VNET because he is a co-founder of VNET.

37.    For a majority of its history, VNET did business under the name "21Vianet Group Inc.", before officially changing its name to VNET Group Inc. in October 2021.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 37 of the Complaint, except admits that VNET changed its name to VNET Group, Inc. in October 2021.

38.    VNET operates through four domestic PRC companies: VNET Technology, BJ iJoy, WiFire Network, and SH Zhiyan. VNET controls (i) 100% of the equity interest in VNET Technology through its subsidiary, VNET China, which was incorporated in October 2022; (ii)

100% of the equity interest of BJ iJoy following the completion of its acquisition of 100% equity interest in iJoy in April 2013; (iii) 100% of the equity interests of WiFire Network through its subsidiary, aBitCool DG, which was incorporated in June 2014; and (iv) 100% of the equity interests of SH Zhiyan and its wholly-owned subsidiary, SH Blue Cloud, through its subsidiary, SH Edge Connect, which was incorporated in November 2020.

**ANSWER:** Mr. Tim Chen admits the allegations contained in Paragraph 38 of the Complaint, except denies that it continues to operate through WiFire Network.

39.    Below is an organizational chart outlining VNET and its host of subsidiaries:



**ANSWER:** Mr. Tim Chen admits that the foregoing organizational chart appears in the VNET 20-Fs. Mr. Tim Chen refers to the VNET 20-Fs for their complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 20-Fs and any factual inferences or legal conclusions made by Plaintiffs based on them.

40.    On April 21, 2011, VNET went public and its ADS shares were listed on the NASDAQ. The ADS shares (as well as the Class A, B, C, and D shares discussed herein) represent equity in the VNET Cayman holding company, rather than in any specific Chinese operating entity.

**ANSWER:** Mr. Tim Chen admits the allegations contained in Paragraph 40 of the Complaint.

41.     Throughout VNET's history, Sheng Chen has always held an outsized role at the Company and held a significant stake in the Company.

**ANSWER:**   Mr. Tim Chen denies the allegations contained in Paragraph 41 of the Complaint.

42.     On April 26, 2022, the Company filed its annual report on Form 20-F for the period ended December 31, 2021 with the SEC (the "2021 20-F"). The 2021 20-F, which was signed by Defendant Sheng Chen, described "with respect to the beneficial ownership of our ordinary shares, as of February 28, 2022, by: each of our directors and executive officers; and each person known to us to own beneficially more than 5.0% of our ordinary shares." It indicated that Sheng Chen owned 78,582,777 shares, or 8.8% of the Company, with 28.8% of the voting power outright, with an additional 48,515,635 shares (5.5% of the Company) with 4.2% voting power through his wholly owned company, GenTao:

**Shares Beneficially Owned**

| | Number | % of beneficial ownership | % of Voting Power[1][2] |
|---|---|---|---|
| **Directors and Executive Officers:** | | | |
| Sheng Chen[3] | 78,582,777 | 8.8 | 28.8 |
| Yoshihisa Ueno[4] | 5,073,276 | * | 2.1 |
| Kenneth Chung-Hou Tai | * | * | * |
| Sean Shao | * | * | * |
| Erhfei Liu | * | * | * |
| Yao Li | * | * | * |
| Samuel Yuan-Ching Shen | * | * | * |
| Tim Chen | * | * | * |
| Shiqi Wang | * | * | * |
| All Directors and Officers as a Group | 86,378,745 | 9.7 | 31.0 |
| **Principal Shareholders:** | | | |
| TT International Asset Management Ltd[5] | 78,069,384 | 8.8 | 6.7 |
| GIC Private Limited[6] | 75,411,438 | 8.5 | 6.5 |
| Vector Holdco Pte. Ltd.[7] | 62,412,780 | 7.0 | 5.4 |
| Tuspark Innovation Venture Limited[8] | 60,911,237 | 6.9 | 5.2 |
| Majara Investment Limited[9] | 53,942,424 | 6.1 | 4.6 |
| GenTao Capital Limited[3][10] | 48,515,635 | 5.5 | 4.2 |

**ANSWER:**   Mr. Tim Chen denies the allegations contained in Paragraph 42 of the Complaint, except admits that VNET filed the VNET 2021 20-F on April 26, 2022, and that Mr. Chen signed the VNET 2021 20-F.  Mr. Tim Chen refers to the VNET 2021 20-F for its complete

19

and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 2021 20-F and any factual inferences or legal conclusions made by Plaintiffs based on it.

43.     Thus, at the start of 2022, Sheng Chen owned 14.3% of VNET and had 33% voting power, more than any other person.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 43 of the Complaint, except admits that, as of February 28, 2022, Mr. Chen, together with GenTao, beneficially owned 14.3% of VNET and had 33% of the voting power.

## II.     VNET's Dependence on Sheng Chen's Control

44.     Sheng Chen's importance to VNET extended well beyond his chairmanship and his ownership in the Company, as multiple corporate documents and loans tied the Company's financial well-being to Sheng Chen continuing to have a significant stake in VNET.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 44 of the Complaint.

45.     According to the Company's articles of association and financing legal documents, a default and divestment of Sheng Chen's stake in VNET would trigger Change of Control clauses contained in the Company's outstanding convertible bonds and domestic loans. For example, on January 28, 2022, VNET raised $250 million from funds managed by Blackstone Tactical Opportunities ("Blackstone") through the sale of convertible notes which had a term of five years and carried interest at 2% per annum. Embedded in the sales document was a clause that allowed Blackstone to redeem their convertible notes early if a "fundamental change" occurred. One fundamental change specified in the sales agreement was if Sheng Chen "ceases to be the largest holder of the Company's voting power represented by all voting securities of the Company (excluding all voting securities of the Company beneficially owned by the Investors and their affiliates (as such term is defined in Rule 405 under the Securities Act)) and (ii) the Founder has resigned from the Board, or been removed from the Board by the Board or the Company's shareholders[.]"

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 45 of the Complaint.  Mr. Tim Chen refers to VNET's articles of association for their complete and accurate contents.  Further, Mr. Tim Chen refers to VNET's convertible note agreement with Blackstone

Tactical Opportunities ("Blackstone Notes") for its complete and accurate contents.  Mr. Tim Chen

denies any paraphrasing, summarizing or characterization of those sources and any factual

inferences or legal conclusions made by Plaintiffs based on them.

46.    According to post-Class Period reports, similar clauses existed in other convertible bonds and domestic loans, all of which totaled over $850 million. See, e.g., Hins Li, Clifford Waits Kurz, VNET Group Inc. 'B' Rating Affirmed Despite Some Governance Weaknesses; Outlook Negative, S&P GLOBAL RATINGS, Feb. 23, 2023, at 1, https://disclosure.spglobal.com/ratings/en/regulatory/article/-/view/type/HTML/id/2952204 ("GenTao Capital Ltd., fully owned by VNET's founder Mr. Josh Sheng Chen, recently defaulted on a loan facility backed by his stake in VNET as collateral. This would have triggered Change of Control clauses embedded in the company's US$850 million outstanding convertible notes, and some of its domestic borrowings."); Du Cheng, Xuran Yang, China-U.S. Warfare in Cloud Services, Chinese IDC Companies Trigger Alarm in Unity, HUGE TRENDS BUSINESS REVIEW, May 17, 2023, https://cloud.ofweek.com/news/2023-05/ART-178801-8440-30596837.html ("In accordance with the Articles of Association of VNET and the various financing, legal documents entered into over the company's operations, the issue of Sheng Chen pledging his own shares for the loan may also trigger several change-of-control clauses contained in the outstanding convertible notes worth US$850 million and part of the company's domestic borrowings.").

**ANSWER:**    The allegations contained in the first sentence of Paragraph 46 of the

Complaint state legal conclusions for which no response is required.  To the extent a response is

required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen refers to the articles "'B' Rating

Affirmed Despite Some Governance Weaknesses; Outlook Negative" and "China-U.S. Warfare in

Cloud Services, Chinese IDC Companies Trigger Alarm in Unity," for their complete contents.

Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the articles and any

factual inferences or legal conclusions made by Plaintiffs based on them.

47.    For this reason, commentators recognized after the Class Period that Sheng Chen's default on the Facility Agreement, combined with Bold ally's ability to thereunder seize his shares, posed an existential risk to the Company. See Du Cheng, Xuran Yang, China-U.S. Warfare in Cloud Services, Chinese IDC Companies Trigger Alarm in Unity, HUGE TRENDS BUSINESS REVIEW, May 17, 2023, https://cloud.ofweek.com/news/2023-05/ART-178801-8440-30596837.html ("If Sheng Chen's shares are completely auctioned off, it may directly lead to the immediate shut-down of the company's operations").

21

**ANSWER:**    Mr. Tim Chen denies the allegations contained in the first sentence of Paragraph 47 of the Complaint.  Mr. Tim Chen refers to the article "China-U.S. Warfare in Cloud Services, Chinese IDC Companies Trigger Alarm in Unity," for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the article and any factual inferences or legal conclusions made by Plaintiffs based on it.

### III.    Sheng Chen's Other Businesses

48.    In addition to his interest in VNET, Sheng Chen wholly owns at least five other companies: GenTao, Fast Horse, Sunrise, Personal Group, and Beacon, all of which are incorporated under the laws of the British Virgin Islands.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 48 of the Complaint, except admits that Mr. Chen owns GenTao, Fast Horse, Sunrise, Personal Group and Beacon and that each of those companies are incorporated under the laws of the British Virgin Islands, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 48 of the Complaint.

49.    These entities operate as vehicles for Shen Chen's personal investments. For example, according to filings by Sheng Chen with the SEC, GenTao is "solely engaged in holding, distributing or effecting any sales of securities held by it. Mr. Sheng Chen wholly owns and controls all the outstanding securities of GenTao. Mr. Sheng Chen is the sole director of GenTao and there is no executive officer of GenTao."[6]

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 49 of the Complaint. Mr. Tim Chen further lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 49 of the Complaint, as Mr. Chen did not file a Schedule 13D on December 21, 2021.

---

[6]    *See* Schedule 13D, filed on December 21, 2021.

### IV.    Sheng Chen's Loan with Bold Ally

50.    On August 19, 2021, Sheng Chen, through GenTao, entered into a loan agreement with Bold Ally (Cayman) Limited for $50,250,000, with Sheng Chen, Beacon, Fast Horse, and Sunrise as guarantors of the loan (the "Facility Agreement").[7] To secure the Facility Agreement, GenTao committed its 48,515,635 Class A ordinary VNET shares as collateral.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 50 of the Complaint, except admits that on August 19, 2021, Mr. Chen and GenTao entered into the Facility Agreement with Bold Ally with Mr. Chen, Beacon, Fast Horse, and Sunrise as guarantors of the loan, and GenTao committed its 48,515,635 Class A ordinary VNET shares as collateral.  Mr. Tim Chen refers to the Facility Agreement for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

51.    As guarantors of the Facility Agreement, Sheng Chen, Beacon, Fast Horse, and Sunrise also committed to (a) guarantee timely performance by GenTao under the Facility Agreement; and (b) satisfy GenTao's obligations if it defaulted on the Facility Agreement.

**ANSWER:**    Mr. Tim Chen admits that Mr. Chen, Beacon, Fast Horse, and Sunrise were guarantors of the Facility Agreement.  Mr. Tim Chen refers to the Facility Agreement for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

52.    Accordingly, to secure the Facility Agreement, Sheng Chen, Beacon, Fast Horse, and Sunrise in their capacity as guarantor pledged their VNET holdings as collateral and perfected that security interest via Cayman equity share mortgages dated August 19, 2021 with Bold Ally.

---

[7]    On August 27, 2021, the Facility Agreement was subsequently amended with respect to non-relevant terms. *See* Schedule 13D Ex. 99.15, filed on February 17, 2023.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 52 of the Complaint. Mr. Tim Chen refers to the Facility Agreement for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

53. This meant that Sheng Chen had pledged all 78,582,777 VNET shares directly or indirectly owned by him as collateral to secure repayment of the loan, including:

(i) 48,515,635 Class A ordinary shares held by GenTao Capital Limited ("GenTao"), (ii) 19,670,117 Class B ordinary shares held by Fast Horse Technology Limited ("Fast Horse"), (iii) 8,087,875 Class B ordinary shares held by Sunrise Corporate Holding Ltd. ("Sunrise"), (iv) four Class A ordinary shares, 769,486 Class B ordinary shares and 60,000 Class C ordinary shares held by Personal Group Limited ("Personal Group"), and (v) 1,479,660 Class A ordinary shares issuable upon vesting of Mr. Sheng Chen's restricted share units within 60 days.

**ANSWER:** Mr. Tim Chen admits the allegations contained in Paragraph 53 of the Complaint.

54. As a result, a GenTao default on the Facility Agreement entitled Bold Ally to seize VNET shares owned by GenTao, Sheng Chen, Fast Horse, Sunrise, and Personal Group.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 54 of the Complaint. Mr. Tim Chen refers to the Facility Agreement for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

55. Because the Facility Agreement was dependent on Sheng Chen's VNET shares as collateral, it included an Early Termination Provision, which stated that if the VNET ADS price fell below $8.50 for two (2) consecutive trading days, Bold Ally would be entitled to cancel the Facility Agreement and declare that all outstanding loans, together with accrued interest and all other amounts accrued to Bold Ally, shall be due and payable within ten (10) business days from the date of such notice to GenTao and Sheng Chen.

24

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 55 of the Complaint, except admits that the Facility Agreement contained an Early Termination Provision. Mr. Tim Chen refers to the Facility Agreement for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on it.

56. The Facility Agreement included an additional clause stated that Sheng Chen was in default, and thus Bold Ally could exercise the Early Termination Provision, if the collateral if the collateral value (i.e., the aggregate of the market value of collateral shares) fell below a pre-determined amount. Collateral shares were defined as: "(a) the ADSs of [VNET] which are, at that time, registered by the Depositary in the name of the Lender for the benefit of the Borrower (or the relevant Obligor) and subject to Transaction Security not prohibited by the Depositary and in form and substance satisfactory to [Bold Ally] and [Bold Ally] is provided with all documents, notices, other evidence as required under the relevant Security Document(s) and any security confirmations as may be required by [Bold Ally]; and the Class A Shares of [VNET] subject to Transaction Security in form and substance satisfactory to [Bold Ally] and [Bold Ally] is provided with all documents, notices, other evidence as required under the relevant Security Document(s) and any security confirmations as may be required by [Bold Ally]." This ultimately created a threshold of $63,000,000, which would occur if the ADS share price dropped below approximately $11.80.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 56 of the Complaint. Mr. Tim Chen refers to the Facility Agreement for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and any factual inferences and legal conclusions made by Plaintiffs based on it.

57. The Facility Agreement, and the consequences for Sheng Chen's default on the Facility Agreement, did not just impact Sheng Chen. As outlined in Section II above, the Change of Control clauses necessitated that Sheng Chen retain a controlling voting stake in VNET. Had Sheng Chen defaulted on the Facility Agreement and had his shares seized by Bold Ally, the Company would have been thrown into chaos. Consequently, the Facility Agreement did not just impact Sheng Chen, but instead VNET as a whole, as it created a significant and destructive risk in the event that Sheng Chen ever defaulted on the loan.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 57 of the Complaint.

25

## V.      Sheng Chen is Put on Actual Notice That a Default Had Already Occurred

58.      From November 15, 2021 through December 15, 2021, VNET's ADS share price dropped precipitously, falling from $17.99 per share to a low of $7.70 per share. This decline caused VNET ADS's share price to fall below the Early Termination Provision's pre-determined threshold of $8.50 that would allow Bold Ally to cancel the Facility Agreement and declare the loan payable within ten (10) days:



**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 58 of the

Complaint, except admits that VNET's opening price on November 15, 2021, was $17.99 per

ADS.

59.      On November 22, 2021 Bold Ally notified Gen Tao and Sheng Chen that collateral margin under the Facility Agreement was then deficient and demanded that more collateral be deposited. According to a subsequent standstill letter acknowledged by Sheng Chen, that margin call was not satisfied. As a result, Sheng Chen and Gen Tao remained in default of the Facility Agreement throughout the Class Period, which they hid from investors.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 59 of the Complaint.

60.      On the three consecutive trading days of November 24, 26, and 29, 2021, the collateral pledged under the Facility Agreement fell below the pre-determined amount in the Facility Agreement, causing multiple Events of Default.[8] On November 30, 2021, GenTao and

---

[8]    *See* Schedule 13D Ex. 99.13, filed on February 17, 2023.

Sheng Chen received a default notice from Bold Ally. Although Defendants had actual knowledge of the default, neither the default nor notice thereof was disclosed to investors.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the Complaint, except admits that Mr. Chen filed the Sheng Chen February 17, 2023, Schedule 13D.  Mr.  Tim Chen refers to the Sheng Chen February 17, 2023 Schedule 13D for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen February 17, 2023 Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

61.    Then, as VNET later admitted, on December 15, 2021, GenTao and Sheng Chen were provided another letter from Bold Ally providing further actual notice that Events of Default remained and an Early Termination event had occurred under the Facility Agreement.[9] In response, on December 21, 2021, GenTao issued a written notice to Bold Ally, stating that it has pledged additional 16,680,000 Class A Ordinary Shares to Bold Ally pursuant to the Facility Agreement.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 of the Complaint.

**VI.    Defendants Make Materially False and Misleading Statements Issued During the Class Period**

**A.    Defendants First Disclose the Bold Ally Loan to Investors**

62.    The Class Period begins on March 23, 2022, when VNET filed a Schedule 13D disclosing certain details about the Bold Ally loan to investors but omitting the most important parts. The March 23, 2022 Schedule 13D stated, in pertinent part:

> ***Bold Ally entered into a term loan facility and in connection with the facility agreement and related mortgage agreements, the borrower of that facility pledged certain Class A Ordinary Shares and Class B Ordinary Shares to Bold Ally as security for the term loan facility (the "Pledged Shares")***. Pursuant to the terms of the mortgage agreements, Bold Ally may be deemed to beneficially own the Pledged Shares.
>
> More specifically, as of the date that this Schedule 13G is filed, Bold Ally may be deemed to beneficially own (i) 48,515,635 Class A Ordinary Shares and (ii)

---

[9]    *See* 2023 Form 20-F, filed on April 26, 2024.

27,757,992 Class B Ordinary Shares, par value US$0.00001 per share, that are convertible into Class A Ordinary Shares on a one-for-one basis at any time (the "Class B Ordinary Shares"). This amount represents 8.6% of the issued and outstanding Class A Ordinary Shares based upon (i) 859,932,323 Class A Ordinary Shares outstanding as of December 31, 2021, as disclosed by the Issuer in its 6-K plus (ii) 27,757,992 Class A Ordinary Shares issuable upon the exchange of 27,757,992 Class B Ordinary Shares for Class A Ordinary Shares. The Reporting Persons, as a result of the relationships described below, may be deemed to directly or indirectly beneficially own the shares of Class A Ordinary Shares that may be beneficially owned by Bold Ally.[10]

**ANSWER:**    Plaintiffs withdrew the allegations contained in Paragraph 62 relating to the March 23, 2022, Schedule 13D because the March 23, 2022, Schedule 13D was filed by Bold Ally, not VNET.  (*See* Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 39, n.4.) Accordingly, no response is required.  To the extent a response is required, Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

63.    The statements identified in ¶62 above were materially false and misleading because they omitted the following information necessary to make the statements not misleading under the circumstances in which they were made: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; and (iv) as a result of (i)-(iii), the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company.

**ANSWER:**    Plaintiffs withdrew the allegations contained in Paragraph 63 relating to the March 23, 2022, Schedule 13D because the March 23, 2022, Schedule 13D was filed by Bold Ally, not VNET.  (*See* Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 39, n.4.) Accordingly, no response is required.  To the extent a response is required, Mr. Tim Chen lacks

---

[10]    Emphasis is added unless otherwise indicated.

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 63 of the Complaint.

64.    On March 30, 2022, VNET filed a Form 6-K signed by Defendant Chen attaching a press release announcing the Company's unaudited financial results for the fourth quarter and full year ended December 31, 2021 (the "March 30, 2022 Press Release").[11] In the March 30, 2022 Press Release, Defendant Shen claimed that VNET had "continued to deliver robust growth *while further diversifying our financing solutions and augmenting the resilience of our business.*"

**ANSWER:**    Mr. Tim Chen admits that VNET filed its VNET Form 6-K and Press

Release dated March 30, 2022, (the "VNET March 30, 2022, Press Release").  Mr. Tim Chen

refers to the VNET March 30, 2022, Press Release for its complete and accurate contents.  Mr.

Tim Chen denies any paraphrasing, summarizing or characterization of the VNET March 30, 2022,

Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

65.    Also in the March 30, 2022 Press Release, Defendant Chen stated that "*we will continue to explore various financing solutions to enhance the health of our balance sheet*, capitalize on rapid growth in IDC demand, *and generate increasing value for our shareholders*."

**ANSWER:**    Mr. Tim Chen admits that VNET filed the VNET March 30, 2022, Press

Release.  Mr. Tim Chen refers to the VNET March 30, 2022, Press Release for its complete and

accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the

VNET March 30, 2022, Press Release and any factual inferences or legal conclusions made by

Plaintiffs based on it.

66.    The statements identified in ¶¶64-65 above were materially false and misleading because they omitted the following information necessary to make the statements not misleading under the circumstances in which they were made: (i) Sheng Chen had already defaulted on a Facility Agreement entered into for his personal benefit and an Early Termination event had already occurred under that Agreement, exposing his VNET holdings which had been pledged as collateral to seizure; (ii) consequently, there was already at that time a substantial threat to Sheng

---

[11]    Foreign Private Issuers like VNET are required by the SEC to file a report on Form 6-K within four (4) days of any event that causes a material change in the issuer's affairs, such as changes in management, financial results, or business development.

Chen's ownership which would trigger violation of the Change in Control covenants in the financing which was the subject of this press release; (iii) as a result, the financing referenced in this press release did not "enhance the health of [VNET's] balance sheet" or "generate increasing value for [VNET] shareholders," but instead the financings exposed the Company to a Hobson's Choice of corporate default or exceptionally diluting the voting power of existing shareholders (and to a lesser extent, diluting their economic ownership).

**ANSWER:** Mr. Tim Chen refers to his responses to Paragraphs 64 and 65 of the Complaint to the extent that those Paragraphs are incorporated into Paragraph 66. The allegations contained in Paragraph 66 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

67.     On March 31, 2022, VNET held its Fourth Quarter 2021 Earnings Conference Call (the "Q-4 2021 Earnings Call") with analysts and investors. During the Q-4 2021 Earnings Call, Defendant Shen stated that:

> Beyond the execution of our strategy, ***we're further exploring options to diversify our financing solutions and enhancing the resilience of our business. In January, we reached an agreement with Blackstone, the world's largest alternative investment firm, pursuant to which, Blackstone made an additional investment in VNET by purchasing $250 million of our convertible notes***.

**ANSWER:** Mr. Tim Chen admits that on March 31, 2022, VNET held its Fourth Quarter 2021 Earnings Conference Call (the "Q4 2021 Earnings Call"). Mr. Tim Chen refers to the Q4 2021 Earnings Call for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Q4 2021 Earnings Call and any factual inferences or legal conclusions made by Plaintiffs based on it.

68.     During the same Q-4 2021 Earnings Call, Defendant Chen reiterated Defendant Shen's vague commitment to "continue to explore various financing solutions," for VNET.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 68 of the Complaint. Mr. Tim Chen refers to the Q4 2021 Earnings Call for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Q4 2021 Earnings Call and any factual inferences or legal conclusions made by Plaintiffs based on it.

30

69.     The statements identified in ¶¶67-68 above were materially false and misleading because they omitted the following information necessary to make the statements not misleading under the circumstances in which they were made: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; (iv) as a result of (i)-(iii), the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company; and (v) consequently, the financing referenced did not "enhance[e] the resilience of [VNET's] business" but instead exposed the Company to a Hobson's Choice of corporate default or exceptionally diluting the voting power of existing shareholders (and to a lesser extent, diluting their economic ownership).

**ANSWER:**    Mr. Tim Chen refers to his responses to Paragraphs 67 and 68 of the Complaint to the extent that those Paragraphs are incorporated into Paragraph 69. The allegations contained in Paragraph 69 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

**B.    Sheng Chen Enters into a Standstill Agreement with Bold Ally and VNET Receives (and Disregards) a Privatization Offer from Hina Group**

70.     On April 6, 2022, Sheng Chen, his personal holding companies, and Bold Ally entered into a standstill agreement which: (a) acknowledged that Sheng Chen was notified in November 2021 of his default of the Facility Agreement and the consequences resulting therefrom; (b) acknowledged that an Early Termination event as defined in the Facility Agreement had already occurred in late 2021; (c) arranged for the transfer of Sheng Chen's pledged shares into Restricted ADSs, so that after the passage of the Rule 144 restriction period, Boldy Ally could sell the ADS shares on U.S. markets; and (d) provided that Bold Ally would not take certain further other actions as a result of the default and Early Termination event.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 of the Complaint.

71.     Significantly, the April 6, 2022 standstill agreement made clear that Bold Ally was free to exercise the Early Termination Provision on any other Early Termination events, which were continuing to occur throughout 2022. Indeed, due to Sheng Chen's refusal to resolve his default under the Facility Agreement, he continued to receive notices that Early Termination events were occurring and Bold Ally was able to seize his shares, but refused to resolve his default under the Facility Agreement and hid that fact from VNET investors.

31

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 of the Complaint.

72.    Also on April 6, 2022, VNET received an unsolicited privatization offer from Hina Group and Industrial Bank, proposing to acquire all of the outstanding ordinary shares of the Company for $8.00 in cash per ADS, or approximately $1.3333 per ordinary share.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 72 of the Complaint, except admits that VNET received a privatization offer from Hina Group.

## C.    Sheng Chen Schemes to Hide Facility Agreement Terms From Investor

73.    On April 8, 2022 Sheng Chen filed a Form Schedule 13G stating that he had pledged all 78,582,777 shares beneficially owned by him as collateral for the Facility Agreement dated August 19, 2021:

(1)    Representing (i) 48,515,635 Class A ordinary shares held by GenTao Capital Limited ("GenTao"), (ii) 19,670,117 Class B ordinary shares held by Fast Horse Technology Limited ("Fast Horse"), (iii) 8,087,875 Class B ordinary shares held by Sunrise Corporate Holding Ltd. ("Sunrise"), (iv) four Class A ordinary shares, 769,486 Class B ordinary shares and 60,000 Class C ordinary shares held by Personal Group Limited ("Personal Group"), and (v) 1,479,660 Class A ordinary shares issuable upon vesting of Mr. Sheng Chen's restricted share units within 60 days. Mr. Sheng Chen is the sole and direct shareholder of GenTao, Fast Horse, Sunrise and Personal Group and may be deemed to have beneficial ownership of the shares held by them.

(2)    Calculation based on (i) 857,359,421 outstanding Class A ordinary shares (excluding treasury shares and Class A ordinary shares in the form of American Depositary Share ("ADS") that are reserved for issuance upon the exercise of share incentive awards), (ii) 30,721,723 outstanding Class B ordinary shares and (iii) 60,000 outstanding Class C ordinary shares. Holders of Class A ordinary shares, Class B ordinary shares and Class C ordinary shares have the same rights except for voting and conversion rights. Each Class A ordinary share is entitled to one vote, whereas (x) each Class B ordinary share is entitled to ten votes and is convertible into one Class A ordinary share at any time by the holder thereof and (y) each Class C ordinary share is entitled to one vote except for veto right on three corporate matters and is convertible into one Class A ordinary share at any time by the holder thereof. ***Based on the foregoing, 78,582,777 Class A ordinary shares beneficially owned by Mr. Sheng Chen represent approximately 8.9% of total outstanding Class A ordinary shares, approximately 8.8% of total outstanding ordinary shares and approximately 28.6% of the aggregate voting power of the total outstanding ordinary shares of the Issuer***.

32

*Facility Agreement*

GenTao, together with Beacon, Fast Horse and Sunrise (the "Corporate Guarantors") and Mr. Sheng Chen (the "Personal Guarantor"), ***entered into a Facility Agreement dated as of August 19, 2021 (the "Facility Agreement") with Bold Ally (Cayman) Limited (the "Lender"). Each of GenTao and the Corporate Guarantors entered into Cayman Equitable Share Mortgages dated as of August 19, 2021 (the "Closing Date") with the Lender, pursuant to which each of GenTao and the Corporate Guarantors pledged on the Closing Date all of the Class A Ordinary Shares and Class B Ordinary Shares owned by them as collateral to secure repayment of amounts outstanding under the Facility Agreement, and may be required to post additional collateral in certain circumstances (the "Cayman Equitable Share Mortgages").*** Mr. Sheng Chen entered into British Virgin Islands Equitable Share Mortgages dated as of the Closing Date with the Lender, pursuant to which Mr. Sheng Chen pledged on the Closing Date all of the British Virgin Islands shares of GenTao, Beacon and Sunrise as collateral to secure repayment of amounts outstanding under the Facility Agreement (the "BVI Equitable Share Mortgages" and together with the Facility Agreement and the Cayman Equitable Share Mortgages, the "Facility Documentation"). As of the date of this statement, the BVI Equitable Share Mortgages for Beacon and Sunrise have been released.

***As of the Closing Date, GenTao has borrowed an aggregate of $50.25 million under the Facility Agreement. Pursuant to the Cayman Equitable Share Mortgages, GenTao and the Corporate Guarantors have collectively pledged, as of the date of this statement, 48,515,635 Class A Ordinary Shares and 27,757,992 Class B Ordinary Shares to secure borrowings under the Facility Agreement.***

The loan matures on or about August 19, 2022. The Facility Agreement provides GenTao with an option to refinance the loan and extend the maturity date for up to two years. ***Upon the occurrence of certain events that are customary for this type of loan, the Lender may exercise its rights to require GenTao to pre-pay the loan proceeds, post additional collateral, or foreclose on, and dispose of, the pledged Class A Ordinary Shares, Class B Ordinary Shares and pledged British Virgin Islands shares of GenTao in accordance with the Facility Documentation.***

**ANSWER:**   Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the Complaint.  Mr. Tim Chen denies the remaining allegations, except admits that on April 8, 2022, Mr. Chen filed the Sheng Chen April 8, 2022, Schedule 13D.  Mr. Tim Chen refers to the Sheng Chen April 8, 2022, Schedule 13D for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or

33

characterization of the Sheng Chen April 8, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

74.    Defendant Sheng Chen signed the April 8, 2022 Schedule 13G.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 74 of the Complaint, except admits that Mr. Chen signed the Sheng Chen April 8, 2022, Schedule 13D.

75.    The statements identified in ¶73 above were materially false and misleading because the statements omitted to disclose the following material adverse information necessary to make the statements made not misleading: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; and (iv) as a result of (i)-(iii), the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company.

**ANSWER:**    Mr. Tim Chen refers to his response to Paragraphs 73 of the Complaint to the extent that Paragraph is incorporated into Paragraph 75.    The allegations contained in Paragraph 75 of the Complaint state legal conclusions for which no response is required.    To the extent a response is required, Mr. Tim Chen denies the allegations.

76.    Attached to Sheng Chen's Form Schedule 13G was a doctored version of the Facility Agreement itself. Significantly, Sheng Chen altered the Facility Agreement to obscure the $8.50 price which allowed Bold Ally to exercise the Early Termination Provision by replacing the figures contained in the actual agreement with asterisks:

34

**8.3 Mandatory Prepayment – Early Termination**

If an Early Termination Event occurs:

(a) the Borrower shall promptly notify the Lender upon becoming aware of that event;

(b) the Lender shall not be obliged to fund any Utilisation; and

(c) the Lender shall be entitled to, by notice to the Borrower, cancel the Commitments and declare that all outstanding Loan(s), together with accrued interest and all other amounts accrued or owing to the Lender under the Finance Documents (including the Exit Fees (Termination)), shall be due and payable within ten (10) Business Days from the date of such notice to the Borrower.

26

For the purpose of this Agreement, **"Early Termination Event"** means the ADS Price and/or the Disrupted ADS Price (as applicable) is lower than US$***** (subject to adjustment for share splits, share consolidations or other similar events in the same manner as set forth in the definition of Cap Price) for two (2) consecutive Trading Days.

**ANSWER:** Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint. Mr. Tim Chen refers to the Facility Agreement and the Sheng Chen April 8, 2022, Schedule 13D for their complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and the Sheng Chen April 8, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on them.

77. Likewise, he obscured the entire "event of default" clause (21.16) by replacing the text in the disclosed version of the Facility Agreement with a series of asterisks:

**21.15 Default under other Finance Document**

An event occurs which is called an "event of default" under any Finance Document other than this Agreement.

**21.16** **********************************

**ANSWER:** Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint. Mr. Tim Chen refers to the Facility Agreement and the Sheng Chen April 8, 2022, Schedule 13D for their complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility

35

Agreement and the Sheng Chen April 8, 2022, Schedule 13D, and any factual inferences or legal conclusions made by Plaintiffs based on them.

78.    The "event of default" clause (21.16) that Sheng Chen altered out of the filed version of the Facility Agreement included a collateral value threshold ($63,000,000, which would occur if the ADS share price dropped below approximately $11.80), which, if breached, constituted a default under the Facility Agreement.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the Complaint.  Mr. Tim Chen refers to the Facility Agreement and the Sheng Chen April 8, 2022, Schedule 13D for their complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Facility Agreement and the Sheng Chen April 8, 2022, Schedule 13D, and any factual inferences or legal conclusions made by Plaintiffs based on them.

79.    Sheng Chen's alteration to the filed version of the Facility Agreement was intended to, and did, further conceal that an Event of Default and an Early Termination event *had already occurred*.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the Complaint.

80.    Sheng Chen's Form Schedule 13G also attached an acknowledgment letter between VNET and Bold Ally, entered into on September 10, 2021, which acknowledged the Facility Agreement itself, the VNET shares that Sheng Chen and his entities pledged as collateral, and the administrative actions that VNET would take, were Bold Ally to seize Sheng Chen's shares. Thus, at the start of the Class Period, VNET was fully aware of the Facility Agreement, its terms, and the Early Termination price of $8.50 that would cause Sheng Chen to be in default.[12]

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 80 of the Complaint, except admits that Mr. Chen appended the Issuer Acknowledgement Letter between VNET and Bold Ally to the Sheng Chen April 8, 2022, Schedule 13D.  Mr. Tim Chen refers to the

---

[12]    *See* Schedule 13D Ex. 99.3, filed on April 8, 2022.

Sheng Chen April 8, 2022, Schedule 13D and the Issuer Acknowledgement Letter for their complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen April 8, 2022, Schedule 13D and the Issuer Acknowledgement Letter and any factual inferences or legal conclusions made by Plaintiffs based on them.

**D.    VNET Misleads Investors in its Form 20-F Annual Report**

81.    On April 26, 2022, the Company filed its annual report on Form 20-F for the period ended December 31, 2021 with the SEC. The 2021 20-F, which was signed by Defendant Sheng Chen, stated in relevant parts:

> Consists of (i) 48,515,635 Class A ordinary shares held by GenTao Capital Limited ("GenTao)", a British Virgin Islands company solely owned by Mr. Chen; (ii)19,670,117 Class B ordinary shares held by Fast Horse Technology Limited ("Fast Horse"), a British Virgin Islands company solely owned by Mr. Chen; (iii) 8,087,875 Class B ordinary shares held by Sunrise Corporate Holding Ltd. ("Sunrise"), a British Virgin Islands company solely owned by Mr. Chen; (iv) 60,000 Class C ordinary shares, 769,486 Class B ordinary shares and four Class A ordinary shares held by Personal Group Limited, a British Virgin Islands company solely owned by Mr. Chen; and (v) 1,479,660 Class A ordinary shares upon vesting of Mr. Chen's restricted share units within 60 days of February 28, 2022. ***Mr. Sheng Chen, as a personal guarantor, together with GenTao, Beacon Capital Group Inc. ("Beacon"), Fast Horse and Sunrise, entered into a Facility Agreement dated as of August 19, 2021 (the "Facility Agreement") with Bold Ally (Cayman) Limited ("Bold Ally"). Mr. Sheng Chen entered into British Virgin Islands Equitable Share Mortgages dated as of August 19, 2021 with Bold Ally, pursuant to which Mr. Sheng Chen pledged on August 19, 2021 all of the British Virgin Islands shares of GenTao, Beacon and Sunrise as collateral to secure repayment of amounts outstanding under the Facility Agreemen***t.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 81 of the Complaint, except admits that VNET filed the VNET 2021 20-F on April 26, 2022, that the VNET 2021 20-F contained the quoted language and that Mr. Chen signed the VNET 2021 20-F. Mr. Tim Chen refers to the VNET 2021 20-F for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 2021 20-F and any factual inferences or legal conclusions made by Plaintiffs based on it.

37

82.     The statements identified in ¶81 above were materially false and misleading because the statements omitted to disclose the following material adverse information necessary to make the statements made not misleading: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; and (iv) as a result of (i)-(iii), the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company.

**ANSWER:**    Mr. Tim Chen refers to his response to Paragraph 81 of the Complaint to the extent that Paragraph is incorporated into Paragraph 82.    The allegations contained in Paragraph 82 of the Complaint state legal conclusions for which no response is required.    To the extent a response is required, Mr. Tim Chen denies the allegations.

83.     The 2021 20-F also purported to disclose the following risks to investors with respect to the ADSs:

**Risks Related to Our ADS**

- ***The market price of our ADSs has fluctuated and may continue to be volatile, which could result in substantial losses to holders of our ADSs.***

- Our directors and employees may face claims and lawsuits as a result of their position in other companies, which may also harm our reputation.

- ***Our triple-class voting structure will limit your ability to influence corporate matters and could discourage others from pursuing any change of control transactions that holders of our Class A ordinary shares and ADSs may view as beneficial.***

- ***Future sales of a substantial number of our ADSs in the public market, or the perception that these sales could occur, could cause the price of our ADSs to decline.***

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 83 of the Complaint, except admits the VNET 2021 20-F contained the quoted risk disclosures.    Mr. Tim Chen refers to the VNET 2021 20-F for its complete and accurate contents.    Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET 2021 20-F and any factual inferences or legal conclusions made by Plaintiffs based on it.

84.    The statements identified in ¶83 above were materially false and misleading because the statements omitted to disclose the following material adverse information necessary to make the statements made not misleading: (i) the risk of "substantial losses to holders of [VNET] ADSs" was far less attributable to normal market volatility than to Sheng Chen's then-existing default on the Facility Agreement, the occurrence of Early Termination events under the Facility Agreement, and the fact that Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement on any future Early Termination events thereunder; and (ii) change of control transactions were unlikely to be "discourage[d]", but rather were more likely to occur via the triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company.

**ANSWER:**    Mr. Tim Chen refers to his response to Paragraph 83 of the Complaint to the extent that Paragraph is incorporated into Paragraph 84.    The allegations contained in Paragraph 84 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

**E.    Sheng Chen Misleads Investors in Response to Additional Privatization Offers**

85.    Shortly thereafter, private entities other than Hina Group began to assemble bids to take VNET private. For example, in July 2022, there were reports that MBK Partners, a private equity firm focused on North Asia, was considering making an offer to privatize VNET.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the Complaint.

86.    At the same time, Sheng Chen continued to be in default of the Facility Agreement. On July 11, 2022, Sheng Chen received a letter from Bold Ally, stating that the standstill period had ended and Sheng Chen was still in default and the Early Termination events were continuing.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the Complaint.

87.    Instead of disclosing that he was so underfunded that he could not even satisfy existing obligations, Sheng Chen pretended to VNET investors that he had sufficient capital to buy the entirety of the Company. On September 13, 2022, Sheng Chen announced a "preliminary non-binding proposal" to acquire all of VNET's shares at $8.20 per ADS in cash. Notably, this offer was $0.20 per ADS higher than the Hina Group and Industrial Bank offer.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 87 of the Complaint, except admits that VNET announced that Mr. Chen made a non-binding offer to take VNET private on September 13, 2022, proposing to acquire all of VNET's outstanding ordinary shares for $8.20 in cash per ADS.

88.    In connection with Sheng Chen's purported offer, VNET filed a Schedule 13D with the SEC on September 14, 2022, which was signed by Sheng Chen. The September 14, 2022 Schedule 13D stated as follows:

*Except as set forth above, none of the Reporting Persons* [including Sheng Chen] *has any plans or proposals that relate to or would result in*:

(a)    the acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer;

(b)    an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries;

(c)    a sale or transfer of a material amount of assets of the Issuer or any of its subsidiaries;

(d)    any change in the present board of directors or management of the Issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

(e)    any material change in the present capitalization or dividend policy of the Issuer;

(f)    any other material change in the Issuer's business or corporate structure;

(g)    changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions that may impede the acquisition of control of the Issuer by any person;

(h)    a class of securities of the Issuer to be delisted from a national securities exchange or cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

(i)    a class of equity securities of the Issuer becoming eligible for termination of registration pursuant to section 12(g)(4) of the Securities Act; or

*(j)    any action similar to any of those enumerated above.*

40

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 88 of the Complaint because Mr. Chen filed a Schedule 13D on September 14, 2022, not VNET ("Sheng Chen September 14, 2022, Schedule 13D"). Mr. Tim Chen refers to the Sheng Chen September 14, 2022, Schedule 13D for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen September 14, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

89. The statements identified in ¶88 above were materially false and misleading because the statements omitted to disclose the following material adverse information necessary to make the statements made not misleading: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; (iv) as a result of (i)-(iii), the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple control change clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company; (v) Sheng Chen had already caused VNET to enter into an Issuer Acknowledgment Letter with Bold Ally outlining material changes in VNET's corporate structure that would be necessitated by his breach of the Facility Agreement, including the transformation of Sheng Chen's Class A shares into Restricted ADS that after the Rule 144 restriction period could be dumped on U.S. markets, dramatically expanding the float and pressuring share price; and (vi) as a result of the Change in Control provisions there would necessarily be enormous changes to the Company's capital structure due to the looming seizure of Sheng Chen's shares that would eliminate his position as the largest shareholder and violate those covenants.

**ANSWER:** Mr. Tim Chen refers to his responses to Paragraph 88 of the Complaint to the extent that Paragraph 88 is incorporated into Paragraph 89. The allegations contained in Paragraph 89 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

90. On September 15, 2022, after the market closed and on the heels of Sheng Chen's privatization offer, VNET announced that Defendant Shen had resigned as CEO, and had been replaced by Defendant Dong.

41

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 90 of the Complaint, except admits that on September 15, 2022, VNET announced that Mr. Shen had resigned as CEO and had been replaced by Mr. Dong.

91. On October 14, 2022, the VNET Board of Directors announced that a special committee was formed to "evaluate and consider the previously announced preliminary non-binding acquisition proposal letter dated September 13, 2022 from Mr. Josh Sheng Chen, founder of the Company and the Executive Chairman of the Board, to acquire all of the outstanding ordinary shares of the Company (the "Proposal") as well as other potential strategic alternatives that the Company may pursue." Additionally, the Company announced that it had retained Kroll Securities, LLC and Kroll, LLC (operating through its Duff & Phelps Opinions Practice) as its independent financial advisor, and Davis Polk & Wardwell LLP as its independent legal counsel to consider Sheng Chen's proposal.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 91 of the Complaint, except admits that on October 14, 2022, VNET announced that a special committee was formed to evaluate Mr. Chen's offer. Mr. Tim Chen refers to VNET's October 14, 2022, press release ("VNET October 14, 2022, Press Release") for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET October 14, 2022, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

92. Not surprisingly given his lack of funds to even pay back Bold Ally, Sheng Chen never followed through on his proposal to privatize VNET.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 92 of the Complaint.

F.    **Sheng Chen Continues to Default on the Facility Agreement**

93. On November 4, 2022, Bold Ally issued three demand letters to (a) Sheng Chen and GenTao, (b) Fast Horse and GenTao, and (c) Sunrise and GenTao — all claiming payments pursuant to the Facility Agreement.

**ANSWER:** Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 of the Complaint.

42

94.     On November 22, 2022, VNET filed a press release with the SEC on Form 6-K signed by Defendant Chen and announcing the Company's unaudited financial results for the three months ended September 30, 2022 (the "November 22, 2022 Press Release"). In the November 22, 2022 Press Release, Defendant Dong claimed that ***"[w]e will continue to execute prudently yet decisively, strategically positioning VNET to capture rising opportunities and creating sustainable value for our stakeholders along the way.***"

**ANSWER:**    Mr. Tim Chen admits that on November 22, 2022, VNET issued a Form 6-K and Press Release ("VNET November 22, 2022, Press Release").  Mr. Tim Chen refers to the VNET November 22, 2022, Press Release for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET November 22, 2022, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

95.     The statement identified in ¶94 above was materially false and misleading because they omitted the following information necessary to make the statements not misleading under the circumstances in which they were made: (i) Gen Tao and Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was free to exercise the Early Termination Provision contained in the Facility Agreement unless Gen Tao maintained the collateral at all times above the defined threshold, which it did not do; and (iv) as a result of (i)-(iii), Defendants had not "execute[d] prudently" and the pledged shares were already at risk of seizure and VNET was already at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company; and (v) Defendants' conduct was the direct opposite of "captur[ing] rising opportunities" or "creating sustainable value for [VNET] stakeholders," particularly where Defendants rejected privatization offer(s) that would have benefitted investors.

**ANSWER:**    Mr. Tim Chen refers to his response to Paragraph 94 of the Complaint to the extent that Paragraph is incorporated into Paragraph 95.  The allegations contained in Paragraph 95 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

96.     On January 18, 2023, Bold Ally issued a second set of demand letters to GenTao, Fast Hord, Sunrise, and Sheng Chen, claiming that the total amounts payable in connection with the Facility Documentation were US$69,203,246.74 as of January 18, 2023.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 of the Complaint.

97.    Despite these notices, Sheng Chen never resolved his default of the Facility Agreement and Defendants continued to conceal the truth from VNET investors throughout the Class Period.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 97 of the Complaint.

**G.    GenTao Defaults on the Bold Ally Loan**

98.    On February 13, 2023, before the market opened, Bold Ally announced in a press release that GenTao had defaulted on the margin loan, and Bold Ally had in turn enforced the terms of the Facility Agreement. The press release stated:

> Following the occurrence of a ***default by GenTao Capital Limited*** (the "Borrower"), a shareholder of VNET Group, Inc. (the "Company") (NASDAQ: VNET), ***under a US$50,250,000 margin loan facility (the "Facility"), Bold Ally (Cayman) Limited (the "Lender") has exercised its rights with respect to the collateral securing the Borrower's repayment obligations under the Facility. A total of 48,515,634 Class A ordinary shares (in the form of 8,085,939 American depositary shares) and 27,757,992 Class B ordinary shares of the Company have been pledged to secure the Facility***.
>
> The Borrower is wholly owned by Mr. Chen Sheng, also known as Josh Sheng Chen ("Mr. Chen"), the Chairman of the Company's Board of Directors. The Facility is full recourse to Mr. Chen.
>
> Under the Facility, the Lender has the right to convert the pledged Class B ordinary shares into Class A ordinary shares and/or deposit such Class A ordinary shares in exchange for American depositary shares. There are no applicable lock-up restrictions in respect of the Class A ordinary shares or the American depositary shares of the Company (collectively, the "Securities"). ***Assuming that all Securities pledged under the Facility were sold, Mr. Chen's voting interest in the Company would significantly decrease***.
>
> The Lender expects the effect sales of the Securities in one or more public market and/or private transactions, depending on market conditions. No assurance can be give how many sales will occur and the lender will not have a commitment to purchase any Securities. No prospectus or other offering document will be used in connection with any sale of the Securities and the Company will not be involved with, or otherwise participate in, any such sale; sales will be made by the Lender solely on the basis of public information.

44

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 98 of the Complaint. Mr. Tim Chen refers to the Bold Ally February 13, 2023, Press Release for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Bold Ally February 13, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

99. Notably, if all 76,273,626 pledged shares were converted into ADS and sold at the ADS market price at the time of Bold Ally's announcement, even if such sales did not further depress ADS prices they would raise just over $40 million — well short of the funds needed to repay the Facility Agreement's loan. As a result, in order to recoup its loan, Bold Ally would be entitled to seize and auction off the rest of Sheng Chen's VNET shares, thereby entirely eliminating Sheng Chen's stake in the Company.

**ANSWER:** The allegations contained in Paragraph 99 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

100. On this news, the Company's ADS share price fell $0.20, or 3.17% on February 13, 2023, on unusually heavy trading volume. The Company's ADS's share price continued to decline by $1.09, or 17.8%, over the next consecutive trading session to close at $5.02 per share on February 14, 2023, again on unusually heavy trading volume.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 100 of the Complaint, except admits that the opening price of VNET ADSs was $6.31 per ADS on February 13, 2023, the closing price was $6.11 per ADS on February 13, 2023, the opening price was $5.94 on February 14, 2023, and the closing price was $5.02 per ADS on February 14, 2023.

101. VNET ADS would have fallen even further but Defendants stemmed the fall by omitting the full truth. They did not then disclose the risk that Sheng Chen's default of the Facility Agreement posed, causing investors to incorrectly believe that the impact of default would be limited to Sheng Chen, and not VNET. Indeed, analysts initially believed that GenTao's default would only impact Sheng Chen and, at most, Sheng Chen's privatization efforts, and not VNET. See Sara Wang, Jasmine Huang, Navin Killa, *21 Vianet: Founder defaulted on US$ share-backed loan*, UBS Group AG, February 14, 2023, at 1 ("**Our reads: increasing uncertainty around privatization**. With the default on the loan, we believe it is less likely for VNET's founder to

45

successfully take the firm private, as a total US$1.2bn would be required."); Edison Lee, Charlie Bai, Nick Cheng, Jacky He, Xinxin Zhao, *Certainly a Twist & Turn but Would Not Impact Privatization*, Jeffries Group LLC, February 14, 2023, at 1 ("VNET's founder defaulted on a US$50m loan collateralized by his 8.6% stake (he owns 8.9% in total). The lender said on Monday night they "have exercised their rights wrt [sic] the pledge", and could sell those shares any time. But given no SEC filing of stake change, this is likely a negotiation tactic on both sides, in our view. We believe this does not change the privatization story, and may even raise its likelihood. The selloff creates a buying opportunity.").

**ANSWER:**     Mr. Tim Chen denies the allegations contained in Paragraph 101 of the Complaint.  Mr. Tim Chen refers to the articles "21 Vianet: Founder defaulted on US$ share-backed loan",  and "Certainly a Twist & Turn but Would Not Impact Privatization," for their complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the articles and any factual inferences or legal conclusions made by Plaintiffs based on them.

102.    On February 15, 2023, before the market opened, VNET issued a press release that announced that the VNET Board of Directors approved the creation of 555,000 new Class D shares, which would be entitled to 500 votes per share, and authorized the issuance of these newly created shares to Sheng Chen, thereby giving Sheng Chen more than 20% voting power in VNET and massively diluting the voting interests (and to a lesser extent the economic interests) of public investors, all in order to sustain Sheng Chen's interest in the Company and avoid triggering Change of Control clauses in VNET's convertible notes and domestic loans:

> ***On February 15, 2023, VNET Group, Inc. (Nasdaq: VNET) ("VNET" or the "Company") announced that its board of directors (the "Board") has approved and authorized the issuance of up to 555,000 newly created Class D ordinary shares to Mr. Sheng Chen ("Mr. Chen"), the Executive Chairman of the Board.*** The Class D ordinary shares will have the same rights as the Company's existing Class B ordinary shares except for voting rights, and ***holders of Class D ordinary shares shall be entitled to 500 votes per share on all matters submitted to shareholder vote***.
>
> ***The proposed issuance of Class D ordinary shares is subject to and conditional upon the occurrence of conversion of pledged Class B ordinary shares beneficially owned by Mr. Chen into Class A ordinary shares upon a transfer to any person who is not an affiliate of Mr. Chen (each, a "Class B Conversion").*** Following each Class B Conversion, the Company will issue a number of Class D ordinary shares to Mr. Chen that is equal to one-fiftieth (1/50) of the number of converted Class B ordinary shares, with fractional shares rounded down to the nearest whole share. The purchase price for each Class D ordinary share shall be equal to the volume weighted average price of the Company's American depositary shares ("ADSs") for the 30 trading days immediately prior to applicable issuance

date, adjusted by the ADS-to-share ratio. Each ADS represents six Class A ordinary shares of the Company.

***This issuance of the newly created Class D ordinary shares is an initiative by the Board to protect the Company's interests and continued stability***.

The proposed issuance of Class D ordinary shares has been approved by the Company's audit committee and board of directors. No Class D ordinary shares have been issued as of the date of this announcement. ***Assuming the conversion of all pledged Class B ordinary shares beneficially owned by Mr. Chen into Class A ordinary shares and the issuance of 555,000 Class D ordinary shares to Mr. Chen, Mr. Chen will own more than 20% of the total voting power of the Company***.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 102 of the Complaint, except admits that VNET filed the VNET February 15, 2023, Press Release.  Mr. Tim Chen refers to the VNET February 15, 2023, Press Release for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET February 15, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

103.    Notably, the issuance of the new 555,000 Class D ordinary shares referenced "the occurrence of conversion of pledged Class B ordinary shares beneficially owned by Mr. Chen into Class A ordinary shares upon a transfer to any person who is not an affiliate of Mr. Chen (each, a 'Class B Conversion')." Thus, VNET created and authorized the issuance to Sheng Chen of up to 555,000 new shares in direct response to the transfer of Sheng Chen's then-existing VNET stake as a result of his default of the Facility Agreement, thereby converting a corporate interest to the personal benefit of Sheng Chen, without shareholder approval or even advance notice.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 103 of the Complaint, except admits that VNET filed the VNET February 15, 2023, Press Release.  Mr. Tim Chen refers to the VNET February 15, 2023, Press Release for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET February 15, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

104.     Because the Class B ordinary shares seized by Bold Ally had 10 times the voting rights compared to Class A ordinary shares, thereby giving Bold Ally or anyone who purchased the seized shares an outsized voting interest at VNET, the Company made the newly created shares "entitled to 500 votes per share on all matters submitted to shareholder vote."

**ANSWER:**     Mr. Tim Chen denies the allegations contained in Paragraph 104 of the Complaint, except admits that VNET filed the VNET February 15, 2023, Press Release.  Mr. Tim Chen refers to the VNET February 15, 2023, Press Release for its complete and accurate contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET February 15, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.

105.     According to VNET, this action was taken by the VNET Board of Directors to "protect the Company's interests and continued stability." This admission concedes that the concealed default and Early Termination events under the Facility Agreement were destabilizing and material to the Company, and thus should have been honestly and timely disclosed to investors.

**ANSWER:**     Mr. Tim Chen denies the allegations contained in the first sentence of Paragraph 105 of the Complaint, except admits that VNET filed the VNET February 15, 2023, Press Release.  Mr. Tim Chen refers to the VNET February 15, 2023, Press Release for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the VNET February 15, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on it.  Mr. Tim Chen denies the allegations contained in the second sentence of Paragraph 105 of the Complaint.

106.     On this news, the Company's ADS price fell $0.33, or 6.3%, to $4.87, before rising slightly to close at $4.92 per share on February 15, 2023, on unusually heavy trading volume. Over the next day, VNET's ADS shares dropped again to close at $4.78 on February 16, 2023. Over this two-day period, VNET's ADS's share price fell $0.42, or 8.07%.

**ANSWER:**     Mr. Tim Chen denies the allegations contained in Paragraph 106 of the Complaint, except admits that the opening price of VNET ADSs was $5.20 per ADS on February

48

15, 2023, the closing price was $4.92 per ADS on February 15, 2023, the opening price was $4.84 on February 16, 2023, and the closing price was $4.78 per ADS on February 16, 2023.

107.    Finally, on February 17, 2023, Sheng Chen filed a Schedule 13D which finally disclosed the letter of acknowledgment signed between VNET and Bold Ally, and admitted, for the first time, that (a) Sheng Chen had been notified at least five times during the Class Period that he was in default and at risk of having his shares seized before they actually were; and (b) on February 8, 2023, GenTao's shares were transferred to Bold Ally. Thus, Sheng Chen's February 17, 2023 13D informed investors, finally, of the risks posed by the Facility Agreement, and Defendants' knowledge of Sheng Chen's continued default of the Facility Agreement.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 107 of the Complaint, except admits that Mr. Chen filed the Sheng Chen February 17, 2023, Schedule 13D. Mr. Tim Chen refers to the Sheng Chen February 17, 2023, Schedule 13D for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen February 17, 2023, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

108.    In response to this news, over the next two trading days, VNET's ADS price declined by $0.45, or 9.47%, to a low of $4.3, before closing at $4.57 on February 21, 2023.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 108 of the Complaint, except admits that the opening price of VNET ADSs was $4.75 per ADS on February 17, 2023, the closing price was $4.53 per ADS on February 17, 2023, the opening price was $4.56 per ADS on February 21, 2023, and the closing price was $4.57 per ADS on February 21, 2023.

109.    From February 13, 2023 to February 21, 2023, VNET's ADS price fell by $2.01, or 31.85%, in response to VNET's news of Sheng Chen's default, and the newly created shares.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 109 of the Complaint, except admits that the opening price of VNET ADSs was $6.31 per ADS on February 13, 2023, and the closing price was $4.57 per ADS on February 21, 2023.

110.    By the graft concealed by Class Period misrepresentations, Sheng Chen was able to retain both the proceeds of his personal $50.25 million loan, and his stake and power in the Company. Public shareholders and the Company paid the cost. As one report, which chided Sheng Chen for "playing games with his shares in the company, raising a lot of governance questions", put it:

> It's not clear what [Sheng] Chen's loan was for or whether he had the funds to repay it. But regardless, he seems to have succeeded in cashing out his shares while retaining his control over VNET. *The way he did it, essentially using his clout at the company to trample on minority shareholders, won't go down so well with any potential new investors. But VNET needs to raise funds from investors to repay its creditors, including the holders of its convertible notes*.
>
> *While what happened is quite colorful in the stodgy world of corporate lore, the more serious ramification is that borrowing will become more difficult and costly for VNET*. Early last month, Fitch downgraded the company's debt deeper into junk territory, citing refinancing risks. And this month, it withdrew its ratings of the company altogether. Moody's also put the company under review for a possible downgrade last month.[13]

ANSWER:    Mr. Tim Chen denies the allegations contained in the first two sentences of Paragraph 110 of the Complaint.  Mr. Tim Chen refers to the article "VNET Mired in Mess of Red Ink, Chairman's Dubious Stock Maneuvers," for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the article and any factual inferences or legal conclusions made by Plaintiffs based on it.

111.    Defendants' attempt to secure Sheng Chen's power by rejecting lucrative external privatization offers also left VNET in dire straits at the end of the Class Period:

> *[D]espite earlier interest, suitors won't exactly be lining up to buy the company in its current state*. Its financial performance remains uninspiring, for starters.
>
> * * * *
>
> VNET did receive an unsolicited bid last April from Chinese private equity firm Hina Group with financial backing from the Shanghai branch of Industrial Bank Co. Ltd., which was followed by a competing offer from [Sheng] Chen in September.…

---

[13]    *See* Warren Yang, VNET Mired in Mess of Red Ink, Chairman's Dubious Stock Maneuvers, BAMBOO WORKS, Mar. 29, 2023, https://thebambooworks.com/vnet-mired-in-mess-of-red-ink-chairmans-dubious-stock-maneuvers/

*But a formal Hina offer has never materialized — and in fact, VNET's shares now trade well below the offer price of $8 per ADS. The stock last closed at $3.20, less than half the offer price, which includes a 12% drop the day after the results announcement*. Some other possible acquirers, including MBK Partners in South Korea, have popped in media reports, probably attracted by the company's bargain price. *But no one seems in a rush to sign a deal right now, and it's not hard to understand why*.[14]

**ANSWER:**   Mr. Tim Chen denies the allegations contained in Paragraph 111 of the Complaint.   Mr. Tim Chen refers to the article "VNET Mired in Mess of Red Ink, Chairman's Dubious Stock Maneuvers," for its complete contents.   Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the article and any factual inferences or legal conclusions made by Plaintiffs based on it.

## VII.   Additional Allegations of Scienter

### A.   Defendants Had Actual Notice of the Concealed Information

112.   On November 22, 2021, Bold Ally notified Gen Tao and Sheng Chen that its margin under the Facility Agreement was deficient and asked for more collateral to be deposited. Then, on November 30, 2021, GenTao and its sole owner, Sheng Chen, received a default notice from Bold Ally. As VNET subsequently admitted, on December 15, 2021, GenTao and its sole owner, Sheng Chen, received a letter from Bold Ally claiming that events of a default were continuing and an Early Termination event had occurred under the Facility Agreement.[15] In response, on December 21, 2021, GenTao issued a written notice to Bold Ally, stating that it has pledged additional 16,680,000 Class A Ordinary Shares to Bold Ally pursuant to the Facility Agreement. Accordingly, VNET's founder and Executive Chairman knew as early as November 30, 2021, before the start of the Class Period, that the risk of GenTao defaulting, and thus triggering a shutdown of VNET, had already begun to materialize. Sheng Chen also knew independently of these notices because he had signed the Facility Agreement and had actual notice of its terms. VNET and its executives, at all times, also had access to the actual Facility Agreement, and therefore knew that its Event of Default and Early Termination Provision had been breached, and VNET had expressly acknowledged what would occur in the case of a default long before the Class Period.

---

[14]   Id.

[15]   *See* 2023 Form 20-F, filed on April 26, 2024.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in the final sentence of Paragraph 112 of the Complaint.   Mr. Tim Chen otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 112 of the Complaint.

113.    On April 6, 2022, Sheng Chen was again notified by Bold Ally that multiple Early Termination events occurred within the prior months and entered into a standstill letter agreement with Bold Ally recognizing that multiple Early Termination events occurred and that Bold Ally could exercise the Early Termination Provision in the future if Early Termination events continued to occur. VNET and its executives were also provided actual notice of the breach because the standstill letter agreement required the transfer of holdings into Restricted ADS, which required action on their part as set forth therein, including sending instruction letters to the Cayman Registrar and obtaining confirmation of transfer.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 113 of the Complaint. Mr. Tim Chen denies the remaining allegations contained in Paragraph 113 of the Complaint.

114.    On July 11, 2022, Sheng Chen was notified that the standstill period had ended and the events of default and the Early Termination events were continuing.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 of the Complaint.

115.    On November 4, 2022, Bold Ally issued three demand letters to (a) Sheng Chen and GenTao, (b) Fast Horse and GenTao, and (c) Sunrise and GenTao — all demanding payments pursuant to the Facility Agreement.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 of the Complaint.

116.    Finally, on January 18, 2023, Bold Ally issued another set of demand letters to GenTao, Fast Horse, Sunrise, and Sheng Chen, specifying that the total amounts payable in connection with the Facility Agreement were US$69,203,246.74 as of January 18, 2023.

52

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint.

117.    Despite all these notices, Sheng Chen continued to hide from investors the already-materialized, known risks.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117 of the Complaint.

**B.    The Temporal Proximity of Significant Events During the Class Period Support Scienter**

118.    The temporal proximity between Sheng Chen's entering of the standstill agreement and his filing of his Schedule 13D two days later bolsters his scienter.

**ANSWER:**    The allegations contained in Paragraph 118 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

119.    On April 6, 2022, Sheng Chen, his personal holding companies, and Bold Ally entered into a standstill agreement which: (a) acknowledged that Sheng Chen was notified in November 2021 of his default of the Facility Agreement and the consequences resulting therefrom; (b) acknowledged that an Early Termination event had occurred in late 2021; (c) arranged for the transfer of Sheng Chen's pledged shares into Restricted ADSs, so that after the passage of the restriction time under SEC Rule 144, Boldy Ally could sell the ADS shares on the open market; and (d) provided that Bold Ally would not take certain further other actions as a result of the default and Early Termination event.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Complaint.

120.    ***Just two days later***, Sheng Chen filed with the United States Securities and Exchange Commission a Schedule 13D in which he disclosed and attached for the first time a highly doctored version of the August 2021 Facility Agreement which obscured both the $8.50 trigger price in the Early Termination Provision and the entirety of the Event of Default provision. That Sheng Chen omitted the most pertinent parts of the Facility Agreement — which could inform investors that he was already in default of the Facility Agreement — so shortly after he entered into the standstill agreement where he acknowledged that he was in default of the Facility

Agreement makes it implausible at best that his doctored filing was not an attempt to hide from investors the truth that he was already in default of the Facility Agreement.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 of the Complaint. Mr. Tim Chen admits that Mr. Chen filed the Sheng Chen April 8, 2022, Schedule 13D.  Mr. Tim Chen refers to the Sheng Chen April 8, 2022, Schedule 13D for its complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen April 8, 2022, Schedule 13D and any factual inferences or legal conclusions made by Plaintiffs based on it.

121.    Similarly, the rapidity at which VNET authorized and created new shares bolsters Defendants scienter that they knew of Sheng Chen's default, and the actions it would need to take in response, well before February 15, 2023.

**ANSWER:**    The allegations contained in Paragraph 121 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

122.    On February 8, 2023, as admitted by Sheng Chen, Bold Ally had seized GenTao's shares in VNET.[16] On February 13, 2023, Bold Ally announced that GenTao officially defaulted on the Facility Agreement and it would seize and auction all pledged VNET shares of Sheng Chen to satisfy the outstanding loan.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 122, except admits on February 8, 2023, the GenTao shares were transferred to Bold Ally.  Mr. Tim Chen refers to the Sheng Chen February 17, 2023, Schedule 13D for its complete contents.  Mr. Tim Chen further refers to the Bold Ally February 13, 2023, Press Release for its complete contents. Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen

---

[16]    *See* Schedule 13D, filed on February 17, 2023.

February 17, 2023, Schedule 13D and the Bold Ally February 13, 2023, Press Release and any factual inferences or legal conclusions made by Plaintiffs based on them.

123.    Within five days of Bold Ally's seizure of shares and within two days of Bold Ally's announcement, Defendants acknowledged they believed it necessary to issue Sheng Chen 555,000 newly created super-voting shares in VNET with a 500-to-1 voting interest, explicitly tying their distribution to the seizure of VNET's shares by Bold Ally.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 123 of the Complaint.

124.    The authorization and creation of such a monumental number of shares, which sustained Sheng Chen's voting interest above 20%, would have required, at the very least: (1) a convening of VNET's Board of Directors so that approval could be obtained; (2) the participation of legal counsel to draft all necessary documents to ensure that the issuance of the newly created shares complied with all necessary rules and regulations; and (3) the participation of a public relations team to draft, revise, finalize and issue the February 15, 2023 press release announcing the issuance of new shares.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 124 of the Complaint.

125.    The idea that all this was accomplished within the time Bold Ally officially took hold of GenTao's shares in VNET and announced the same to investors is farfetched. The only plausible inference is that these steps had been long-planned, since the Company knew since 2021 that Sheng Chen had been in default and knew since the April 6, 2022 standstill letter that Sheng Chen's shares would be converted into Restricted ADS that would become saleable by early 2023.

**ANSWER:**    The allegations contained in Paragraph 125 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations contained in Paragraph 125 of the Complaint.

126.    That the new issuance was long-planned and known is bolstered by the acknowledgment letter VNET entered into with Bold Ally on September 10, 2021, which put VNET on notice of the Facility Agreement and the risk it posed.[17]

---

[17]    *See* Schedule 13D Ex. 99.3, filed on April 8, 2022.

**ANSWER:**    The allegations contained in Paragraph 126 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen refers to the Issuer Acknowledgement Letter for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Issuer Acknowledgement Letter and any factual inferences or legal conclusions made by Plaintiffs based on it.

### C.    Defendant Shen's Resignation Bolster's Scienter

127.    On September 15, 2022, after the market closed, VNET announced that Defendant Shen had resigned as CEO, and was replaced by Defendant Dong.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 127 of the Complaint, except admits that on September 15, 2022, VNET announced that Mr. Shen resigned as CEO and was replaced by Mr. Dong.

128.    This resignation occurred only two days after Sheng Chen made his privatization offer to VNET and one day after VNET filed a Schedule 13D with the SEC which contained misleading statements. The temporal proximity between VNET's misleading statements connected to Sheng Chen's privatization offer and Defendant Shen's resignation from VNET contributes to a strong inference of scienter.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in the first sentence of Paragraph 128 of the Complaint.  The allegations contained in the second sentence of Paragraph 128 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

### D.    That Individual Defendants Certified VNET's Filing to Investors Bolsters Scienter

129.    Defendants' Shen and Chen's actual knowledge of the falsity of the alleged misstatements and omissions is also established by their signing of certification in connection with VNET's filing of its Form 20-F with the SEC. These certifications certified, among other things, that "[VNET's 20-F] does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which

56

such statements were made, not misleading with respect to the period covered by this report[,]" and that "[t]he information contained in the [20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

**ANSWER:**    The allegations contained in Paragraph 129 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen refers to the VNET 2021 20-F and the VNET 2022 20-F for their complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of those filings and any factual inferences or legal conclusions made by Plaintiffs based on them.

130.    If Individual Defendants Shen and Chen had, in fact, made that assessment, then they were aware of the material risk that GenTao's pending default posed, and should have informed investors of the truth. If they had not, then they were reckless in making such statements to investors.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in Paragraph 130 of the Complaint.

**E.    That Individual Defendants Had Access to the Concealed Truth Bolsters Scienter**

131.    That Defendants Sheng Chen, Dong, Shen, and Chen were VNET's most senior executives and on its management, team further supports an inference of scienter. Defendants Sheng Chen, Dong, Shen, and Chen knew facts and had access to information suggesting that their public statements were not accurate or failed to check the information they had a duty to monitor.

**ANSWER:**    The allegations contained in Paragraph 131 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

132.    As senior executives, Individual Defendants would have known about the Change of Control clauses contained in the Company's $850 million outstanding convertible bonds and domestic loans. Indeed, Sheng Chen signed the January 28, 2022 agreement with Blackstone that contained the Change of Control clause, and Defendants subsequently filed the Blackstone agreement with the SEC.

**ANSWER:**    The allegations contained in Paragraph 132 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations, except admits that Mr. Chen signed the Blackstone Notes that contained a change of control clause and VNET filed the Blackstone Notes with its 2022 20-F.  Mr. Tim Chen refers to the Blackstone Notes for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Blackstone Notes and any factual inferences or legal conclusions made by Plaintiffs based on it.

133.    Further, on September 10, 2021, VNET entered into an acknowledgment letter with Bold Ally, which put VNET on notice of the Facility Agreement and its terms.[18] This letter established that Individual Defendants, as executives of VNET, had access to and knew the parameters of the Facility Agreement, including that Sheng Chen's stake in VNET was used as collateral, that the Early Termination Provision was tied to VNET's share price staying above $8.50, and that there was a collateral value threshold of $63,000,000, which would be breached if VNET's ADS value dropped below approximately $11.80. Thus, Individual Defendants would have known about the risk that the Facility Agreement posed, and that he was in default of the agreement as early as November 2021 when VNET's share price fell below $8.50 and the collateral value threshold was breached.

**ANSWER:**    The allegations contained in Paragraph 133 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen refers to the Issuer Acknowledgement Letter for its complete and accurate contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Issuer Acknowledgement Letter and any factual inferences or legal conclusions made by Plaintiffs based on it.

134.    Moreover, when Sheng Chen filed the Facility Agreement with his Schedule 13D on April 8, 2022, he altered the Facility Agreement to obscure the $8.50 price that would trigger the Early Termination Provision and omitted the collateral value threshold clause entirely. The other Defendants, having already entered into an acknowledgment letter with Bold Ally that they knew the terms of the Facility Agreement, had access to information that established that they

---

[18]    *See* Schedule 13D Ex. 99.3, filed on April 8, 2022.

58

either knew or recklessly disregarded the fact that Sheng Chen altered the Facility Agreement to mislead investors, and that he was continually in default of the Facility Agreement throughout 2022, thus subjecting VNET to the risk that Sheng Chen would have his shares seized and the Change of Control clauses contained in the Company's outstanding convertible bonds and domestic loans would be triggered, thus threatening the health of the Company.

**ANSWER:**    Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 134 of the Complaint.  The allegations contained in Paragraph 134 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen refers to the Sheng Chen April 8, 2022, Schedule 13D and the Facility Agreement for their complete contents.  Mr. Tim Chen denies any paraphrasing, summarizing or characterization of the Sheng Chen April 8, 2022, Schedule 13D and the Facility Agreement and any factual inferences or legal conclusions made by Plaintiffs based on them.

**F.    That Defendants' Misrepresentations Involved VNET's Survival Bolsters Scienter**

135.    Defendants' scienter is also supported by the fact that the alleged misstatements and omissions concerned VNET's continued operation. Had Sheng Chen lost all of his shares due once the known default risk materialized, multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans would have been triggered, a violation so serious that post-Class Period reports indicated it threatened to shut down the entire Company.

**ANSWER:**    The allegations contained in Paragraph 135 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

136.    Therefore, especially in light of Bold Ally's numerous notices to Sheng Chen that Early Termination events were occurring, as well as Defendants' admitted knowledge through an acknowledgment letter with Bold Ally, see ¶80 above, it would be absurd to infer that VNET's most senior executives — including its founder, Executive Chairman, and owner of GenTao — were unaware of the undisclosed risk that Sheng Chen's defaulting on the Facility Agreement posed.

59

**ANSWER:** The allegations contained in Paragraph 136 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

**G.    Defendants Had Significant Motivation to Mislead Investors and Conceal Sheng Chen's Default of the Facility Agreement**

137.    Throughout the Class Period, Defendants were on notice of the terms of the Facility Agreement, the impact Gen Tao and Sheng Chen's default of the Facility Agreement would have on VNET, and that Gen Tao and Sheng Chen had already defaulted on the Facility Agreement multiple times before the Class Period began.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 137 of the Complaint.

138.    Moreover, Sheng Chen wielded significant sway inside of VNET, as he was not only the founder and Executive Chairman of the Company, but also a member of the compensation committee of the VNET Board of Directors, which oversees the compensation of VNET's officers, and a member of the nominating and corporate governance committee of the VNET Board of Directors, which oversees the composition and compensation of the VNET Board of Directors.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 138 of the Complaint, except admits that Mr. Chen was the co-founder of VNET, served as the Executive Chairman of the Company and served as a member of the compensation committee of the VNET Board of Directors and as a member of the nominating and corporate governance committee of the VNET Board of Directors.

139.    Consequently, Defendants had significant incentive to authorize and create hundreds of thousands of new VNET shares for the benefit of Sheng Chen, should Bold Ally ever exercise the Early Termination Provision.

**ANSWER:** Mr. Tim Chen denies the allegations contained in Paragraph 139 of the Complaint.

140.    However, this issuance of shares required conferring a personal benefit on Sheng Chen that was neither specified in Sheng Chen's disclosed compensation nor authorized by any

compensation plan. Further, issuing such a significant amount of new shares would, by necessity, prejudice smaller shareholders, which could cause investors to sell their VNET stakes, thereby driving the ADS price downward and making it more likely that Bold Ally would exercise the Early Termination Provision.

**ANSWER:**    Mr. Tim Chen denies the allegations contained in the first sentence of Paragraph 140 of the Complaint.  The allegations contained in the second sentence of Paragraph 140 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

141.    Therefore, Defendants were motivated to hide both Sheng Chen's default of the Facility Agreement and VNET's plan to confer a significant, unauthorized benefit on its dominant executive.

**ANSWER:**    The allegations contained in Paragraph 141 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen further submits that the allegations contained in Paragraph 141 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

## NO SAFE HARBOR

142.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of VNET who knew that the statement was false when made.

**ANSWER:** The allegations contained in Paragraph 142 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

143. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired VNET securities during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, Bold Ally, the officers and directors of the Company and/or Bold Ally, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants are or were affiliated or have or had a controlling interest.

**ANSWER:** The allegations contained in Paragraph 143 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations except submits that following the Plaintiffs' dismissal of their allegations regarding Bold Ally's statements contained in Paragraphs 62 and 63, Plaintiffs purport to bring this action on behalf of themselves and all persons or entities that purchased VNET ADS from March 23, 2022, and February 17, 2023, inclusive, under Rule 23. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

144. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, VNET securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are several hundred or potentially more than a thousand members in the proposed Class. VNET's most recent Form 20-F indicates that it has 182,142,651 outstanding shares. Owners of these shares and other members of the Class may be identified from records maintained by VNET or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

**ANSWER:** The allegations contained in the first sentence of Paragraph 144 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen lacks knowledge or information

62

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 144 of the Complaint, except admits that VNET ADS were listed on the NASDAQ between March 23, 2022, and February 17, 2023, inclusive.

145.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**ANSWER:**    The allegations contained in Paragraph 145 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

146.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

**ANSWER:**    The allegations contained in Paragraph 146 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

147.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of VNET;

- whether the Individual Defendants caused VNET to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of VNET securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

**ANSWER:** The allegations contained in Paragraph 147 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

148. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER:** The allegations contained in Paragraph 148 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

149. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- VNET securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold VNET securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64

**ANSWER:**    The allegations contained in Paragraph 149 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations contained in Paragraph 149 of the Complaint.  Mr. Tim Chen also lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149 of the Complaint regarding the legal theories on which Plaintiffs will rely or Plaintiffs' purported purchases, acquisitions, or sales of VNET securities.

150.    The market for VNET's ADS shares was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, VNET ADS's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of VNET ADS securities and market information relating to VNET and have been damaged thereby.

**ANSWER:**    The allegations contained in the first two sentences of Paragraph 150 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 150 of the Complaint.  Mr. Tim Chen also denies that Plaintiffs have suffered any damages.

151.    During the Class Period, the artificial inflation of VNET's shares was caused by the omissions and/or misrepresentations particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about VNET's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of VNET and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' omissions and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

**ANSWER:**    The allegations contained in Paragraph 151 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen

denies the allegations.  Mr. Tim Chen lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 151 of the Complaint.  Mr. Tim Chen also denies that Plaintiffs have suffered any damages.

152.    At all relevant times, the market for VNET ADS securities was an efficient market for the following reasons, among others:

>   (a)    VNET ADS shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

>   (b)    As a regulated issuer, VNET filed regular periodic public reports with the SEC;

>   (c)    VNET regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

>   (d)    VNET was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

**ANSWER:**    The allegations contained in Paragraph 152 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

153.    As a result of the foregoing, the market for VNET ADS securities promptly digested current information regarding VNET from all publicly available sources and reflected such information in VNET's ADS share price. Under these circumstances, all purchasers of VNET ADSs during the Class Period suffered similar injury through their purchase at artificially inflated prices, and a presumption of reliance applies.

**ANSWER:**    The allegations contained in Paragraph 153 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen also denies that Plaintiffs have suffered any damages.

154.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects — information that Defendants were obligated to disclose — positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

ANSWER:    The allegations contained in Paragraph 154 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen also denies that Plaintiffs have suffered any damages.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

155.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

ANSWER:    Mr. Tim Chen repeats each of the above responses as though fully set forth herein.

156.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

ANSWER:    The allegations contained in Paragraph 156 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen admits Plaintiffs purport to assert a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

157.    During the Class Period, Defendants omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and made material affirmative misrepresentations concerning, inter alia, (i) Sheng Chen had already defaulted on the Facility Agreement; (ii) Early Termination events under the Facility Agreement had already occurred; (iii) Bold Ally was then free to exercise the Early

67

Termination Provision contained in the Facility Agreement; (iv) accordingly, as a result of (i)-(iii), Sheng Chen's ownership stake in VNET was already subject to seizure; and (v) due to (iv), VNET was at risk of triggering of multiple Change of Control clauses contained in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that domestic Chinese reports indicated it threatened to shut down the entire Company. Such misrepresentations were intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of VNET ADS securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire VNET ADS securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

**ANSWER:**    The allegations contained in Paragraph 157 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

158.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of VNET'S SEC filings and public statements described above, that were designed to influence the market for VNET ADS securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about VNET's risks.

**ANSWER:**    The allegations contained in Paragraph 158 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

159.    By virtue of their positions at and exercise of day-to-day authority over VNET, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

**ANSWER:** The allegations contained in Paragraph 159 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

160. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and the executives actually controlling VNET's day-to-day activities, the Individual Defendants had knowledge of the details of VNET's internal affairs.

**ANSWER:** The allegations contained in Paragraph 160 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

161. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their control and authority over VNET, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of VNET. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to VNET's businesses, operations, and financial condition. As a result of the dissemination of the aforementioned false and misleading statements, the market price of VNET securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning VNET's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired VNET securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants and were damaged thereby.

**ANSWER:** The allegations contained in Paragraph 161 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

162. During the Class Period, VNET ADS securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of VNET ADS securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and

69

the Class, the true value of VNET ADS securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of VNET ADS securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

**ANSWER:** The allegations contained in Paragraph 162 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

163. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**ANSWER:** The allegations contained in Paragraph 163 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

164. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**ANSWER:** The allegations contained in Paragraph 164 of the Complaint state legal conclusions for which no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

## COUNT II

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) & (c) Promulgated Thereunder Against Sheng Chen and VNET)

165. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Mr. Tim Chen repeats each of the above responses as though fully set forth herein.

166.    During the Class Period, Sheng Chen and VNET employed devices and artifices to defraud, and carried out a plan, scheme, and course of conduct which was intended to, and throughout the Class Period, did: (a) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (b) caused Plaintiffs and the other members of the Class to purchase VNET's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Sheng Chen and VNET engaged in additional deceptive conduct, including the alteration and manipulation of filed documents to conceal Sheng Chen's default under the Facility Agreement and the occurrence of an Early Termination event from disclosure, as well as making the omissions and misleading statements alleged in ¶¶62, 64-65, 67-68, 73, 81, 83, 88, & 94 above.

**ANSWER:**    Mr. Tim Chen submits that the allegations contained in Paragraph 166 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

167.    Specifically, Sheng Chen and VNET employed the following devices, schemes, and artifices to defraud while in possession of material adverse non-public information and engaged in the following acts, practices and a course of conduct in an effort to keep his default under the Facility Agreement unknown to investors:

- Both failed to disclose the risks posed by the Event of Default and Early Termination Provision in the Facility Agreement and the control change clauses contained in the Company's $850 million outstanding convertible bonds and domestic loans;

- Sheng Chen materially and deceptively altered the version of the Facility Agreement he filed with the SEC on April 8, 2022 to omit the $8.50 price floor that triggers the Early Termination Provision to prevent investors from knowing that he was already in default of the Facility Agreement;

- Sheng Chen materially and deceptively altered the version of the Facility Agreement he filed with the SEC on April 8, 2022 to omit the Event of Default language so that investors would not discover that he was already in default; and

- VNET secretly arranged for Sheng Chen's pledged shares to be transferred into Restricted ADS, which would become saleable before the end of the Class Period.

**ANSWER:**    Mr. Tim Chen submits that the allegations contained in Paragraph 167 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and

therefore no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

168. As a result of Defendants' fraudulent scheme and failure to disclose material facts, as set forth above, the market price for VNET's ADS securities was artificially inflated during the Class Period.

**ANSWER:** Mr. Tim Chen submits that the allegations contained in Paragraph 168 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations.

169. In ignorance of the fact that market prices of VNET's publicly traded ADS shares were artificially inflated, and relying upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information concealed from them as detailed herein, Plaintiffs and the other members of the Class acquired VNET ADSs during the Class Period at artificially high prices and were damaged thereby.

**ANSWER:** Mr. Tim Chen submits that the allegations contained in Paragraph 169 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

170. At the time Defendants orchestrated this fraudulent scheme, Plaintiffs and other members of the Class were ignorant of its nature or existence. Had Plaintiffs and the other members of the Class and the marketplace known the truth about this unlawful scheme, Plaintiffs and the other members of the Class would not have purchased or otherwise acquired VNET's ADS securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices at which they did.

**ANSWER:** Mr. Tim Chen submits that the allegations contained in Paragraph 170 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required. To the extent a response is required, Mr. Tim Chen denies the allegations. Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

72

171.     As a direct and proximate result of Defendants' wrongful scheme, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**ANSWER:**     Mr. Tim Chen submits that the allegations contained in Paragraph 171 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

172.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5(a) & (c) promulgated thereunder and are liable to Plaintiffs and the Class members who have been damaged as a result of such violations.

**ANSWER:**     Mr. Tim Chen submits that the allegations contained in Paragraph 172 of the Complaint were dismissed by the Court's Decision and Order dated September 15, 2025, and therefore no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.  Mr. Tim Chen further denies that Plaintiffs have suffered any damages.

## COUNT III

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

173.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:**     Mr. Tim Chen repeats each of the above responses as though fully set forth herein.

174.     During the Class Period, the Individual Defendants participated in the operation and management of VNET, and controlled, directly and indirectly, the day-to-day conduct of VNET's business affairs. Because of their senior positions and their actual exercise of authority, they knew the adverse non-public information about VNET's misstatement of risks.

**ANSWER:**     The allegations contained in Paragraph 174 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

73

175.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to VNET's risks to VNET's business, and to correct promptly any public statements issued by VNET which had become materially false or misleading.

**ANSWER:**    The allegations contained in Paragraph 175 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

176.    Because of their control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the SEC filings and public statements which VNET disseminated in the marketplace during the Class Period concerning VNET's risks. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause VNET to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of VNET within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of VNET securities.

**ANSWER:**    The allegations contained in Paragraph 176 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

177.    Each of the Individual Defendants, therefore, acted as a controlling person of VNET. By reason of their senior management positions and/or being directors of VNET, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, VNET to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of VNET and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

**ANSWER:**    The allegations contained in Paragraph 177 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

178.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by VNET.

74

**ANSWER:**    The allegations contained in Paragraph 178 of the Complaint state legal conclusions for which no response is required.  To the extent a response is required, Mr. Tim Chen denies the allegations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

**ANSWER:**    Mr. Tim Chen denies that Plaintiffs are entitled to relief and respectfully requests that the Court dismiss all claims against Mr. Tim Chen with prejudice and order such further relief for VNET as the Court deems just and proper.  Mr. Tim Chen further denies that this action is appropriate for class action treatment.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

**ANSWER:**    This Paragraph contains no factual allegation therefore no response is required.  Mr. Tim Chen reserves the right to challenge Plaintiffs' demand for a trial by jury.

## AFFIRMATIVE AND OTHER DEFENSES

As separate and distinct affirmative defenses, Mr. Tim Chen alleges as follows: By alleging the matters set forth below, Mr. Tim Chen does not thereby allege or admit that Mr. Tim Chen has the burden of proof or the burden of persuasion with respect to any of these matters.

75

Furthermore, Mr. Tim Chen hereby gives notice that Mr. Tim Chen intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserve the right to amend its answer and assert all such defenses.

### First Defense

This action is barred, in whole or in part, because the statements Plaintiffs challenge were not false or misleading and Mr. Tim Chen neither had a duty nor breached a duty to disclose any facts allegedly not disclosed.

### Second Defense

This action is not maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because some or all of the requirements of Rule 23 are not met.

### Third Defense

This action is barred, in whole or in part, because Mr. Tim Chen is immune from liability for certain statements complained of in the Complaint under the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-5, and/or the bespeaks caution doctrine.

### Fourth Defense

This action is barred, in whole or in part, because certain statements complained of in the Complaint are non-actionable statements of opinion.

### Fifth Defense

This action is barred, in whole or in part, because certain statements complained of in the Complaint are non-actionable statements of opinion or statements of puffery.

**Sixth Defense**

This action is barred, in whole or in part, because Plaintiffs are not entitled to any recovery from Mr. Tim Chen because, at the time Plaintiffs acquired VNET's ADSs, Plaintiffs and the putative class knew or should have known of any alleged untrue statement of material fact disclosed in VNET's public filings, disclosures, and announcements, or of any omission of a material fact required to be stated therein or necessary to make the statements therein not misleading.

**Seventh Defense**

This action is barred, in whole or in part, because Mr. Tim Chen did not omit to state any material facts necessary in order to make any statement made by VNET or Mr. Tim Chen not false or misleading.

**Eighth Defense**

This action is barred, in whole or in part, because any alleged misrepresentations or omissions for VNET or Mr. Tim Chen is allegedly responsible were not material.

**Ninth Defense**

This action is barred, in whole or in part, because no one whose intent could be imputed to Mr. Tim Chen acted with scienter.

**Tenth Defense**

This action is barred, in whole or in part, because Mr. Tim Chen acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action.

**Eleventh Defense**

This action is barred, in whole or in part, because Mr. Tim Chen was not the actual or proximate cause of any injury to Plaintiffs or the putative class.

**Twelfth Defense**

This action is barred, in whole or in part, because the statements or omissions alleged in the Complaint were not made for the purpose of inducing the purchase or sale of securities.

**Thirteenth Defense**

This action is barred, in whole or in part, because Plaintiffs and the putative class are not entitled to any recovery from Mr. Tim Chen because Plaintiffs and members of the putative class did not acquire VNET ADSs relying on any alleged untrue statement of material fact disclosed in Mr. Tim Chen or VNET's public filings, disclosures, and announcements, or relying upon Mr. Tim Chen or VNET's public filings, disclosures, and announcements and not knowing of any alleged omission of a material fact required to be stated therein or necessary to make the statements therein not misleading.

**Fourteenth Defense**

This action is barred, in whole or in part, to the extent there are intervening and superseding causes of alleged harm, if any, suffered by Plaintiffs or the putative class.

**Fifteenth Defense**

This action is barred, in whole or in part, because Plaintiffs' and the putative class's damages, if any, are speculative and thus are not recoverable.

**Sixteenth Defense**

This action is barred, in whole or in part, because Plaintiffs and the putative class have no compensable damages.

## Seventeenth Defense

This action is barred, in whole or in part, due to the absence of loss causation.

## Eighteenth Defense

This action is barred, in whole or in part, because the fraud on the market theory does not apply.

## Nineteenth Defense

This action is barred, in whole or in part, because neither the *Affiliated Ute* nor the *Basic* presumption applies.

## Twentieth Defense

This action is barred, in whole or in part, to the extent Plaintiffs and the putative class seek damages that exceed those permitted under the federal securities laws and other applicable laws.

## Twenty-First Defense

This action is barred, in whole or in part, because to the extent it is or may be determined that any person is alleged to have been acting as an agent for VNET or Mr. Tim Chen in violation of the Securities Exchange Act of 1934 or any rules of the SEC, with respect to any of the alleged conduct on which the Complaint is based, those actions cannot be imputed to Mr. Tim Chen.

## Twenty-Second Defense

This action is barred, in whole or in part, by the doctrines of contributory negligence, comparative negligence, and/or assumption of risk because Plaintiffs and the putative class knew, or in the exercise of reasonable care should have known, the risks inherent in investing in the securities at issue and they assumed the risk of a decline in the value of their investments.

**Twenty-Third Defense**

This action is barred, in whole or in part, because the putative class period is overbroad and therefore, many of the putative class members are not entitled to any recovery.

**Twenty-Fourth Defense**

This action is barred, in whole or in part, because some or all of Plaintiffs and the members of the putative class would be unjustly enriched if they were permitted to obtain any recovery in this action.

**Twenty-Fifth Defense**

This action is barred, in whole or in part, because some or all of Plaintiffs and the members of the putative class have failed to mitigate damages and have failed to exercise due diligence in an effort to mitigate their damages (to which, in any event, they are not entitled).

**Twenty-Sixth Defense**

Any recovery for damages allegedly incurred by Plaintiffs, if any, is limited to the percentage of responsibility of Mr. Tim Chen in proportion to the total fault of all persons, whether or not named as parties to this action, who may have caused or contributed to Plaintiffs' alleged damages, if any, pursuant to the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. §78u-4(f)(3)(A).

**Twenty-Seventh Defense**

Plaintiffs' cause of action under Section 20(a) of the Securities Exchange Act of 1934 is barred, in whole or in part, because Plaintiffs and the putative class cannot establish the primary liability necessary to assert a claim for control person liability.

**Twenty-Eighth Defense**

This action is barred, in whole or in part, by the doctrine of equitable estoppel.

### Twenty-Ninth Defense

This action is barred, in whole or in part, by the doctrine of ratification.

### Thirtieth Defense

This action is barred, in whole or in part, by the doctrine of unclean hands to the extent Lead Plaintiffs or members of the putative class were responsible for promotion, offer or sale of any alleged unregistered securities.

### Thirty-First Defense

This action is barred, in whole or in part, by the doctrine of *in pari delicto* to the extent Lead Plaintiffs or members of the putative class were responsible for promotion, offer or sale of any alleged unregistered securities.

### Thirty-Second Defense

This action is barred, in whole or in part, by the doctrine of *in pari delicto* to the extent Lead Plaintiffs or members of the putative class were responsible for promotion, offer or sale of any alleged unregistered securities.

### Thirty-Third Defense

This action is barred, in whole or in part, by the doctrine of laches.

### Thirty-Fourth Defense

This action is barred, in whole or in part, to the extent that Lead Plaintiffs and members of the putative class waived their claims through unreasonable delay in bringing this action following their purported transactions with VNET ADS.

82

**WHEREFORE**, Mr. Tim Chen respectfully requests that the Complaint be dismissed with prejudice and that the Court award Mr. Tim Chen his costs and attorneys' fees and any other relief deemed just and proper.

Dated: New York, New York
      November 13, 2025

Respectfully submitted,

*/s/ Robert A. Fumerton*
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Thomas F. Allen
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000
Fax:     (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
thomas.allen@skadden.com

*Counsel for Defendant Tim Chen*