UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE VNET GROUP, INC. SECURITIES LITIGATION

23 Civ. 11187 (DEH)

**MEMORANDUM OPINION AND ORDER**

DALE E. HO, United States District Judge:

Lead Plaintiff Wong Tan ("Lead Plaintiff") and additional named Plaintiff Michael Semerak (collectively, "Plaintiffs") move for final approval of a class action settlement on behalf of themselves and all those similarly situated (the "Settlement"). Presently before the Court are Plaintiffs' (1) Motion for Final Approval of the Class Action Settlement ("Final Approval Mot."), ECF No. 69; and (2) Motion for Attorneys' Fees ("Fees Mot."), ECF No. 70. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated April 3, 2026 (the "Stipulation"), ECF No. 66-1. The Settlement was preliminarily approved on May 5, 2026. Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), ECF No. 68. On August 27, 2026, the Court held a fairness hearing (the "Fairness Hearing") regarding final approval of the Settlement. *See* Minute Entry dated August 27, 2026. The Court granted the motions on the record at the August 27 hearing and issued a judgment noting that an opinion would follow. For the reasons stated herein and on the record during the Fairness Hearing, Plaintiffs' unopposed Motion for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees are **GRANTED**.

## BACKGROUND

### I. Factual Background

The initial complaint in this Action was filed on December 26, 2023, asserting claims under Sections 10 and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Compl., ECF No. 1. The Amended Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. The factual background of this case is set forth in detail in the Court's Opinion denying Defendants' Motion to Dismiss, familiarity with which is presumed. *See* Op. and Order at 2-6, ECF No. 43. In brief, Plaintiffs allege that, during the period between March 23, 2022 and February 17, 2023 (the "Class Period"), Defendants: (1) misrepresented VNET's business and financial operations, and the reporting of certain transactions because Sheng Chen had already defaulted on the Bold Ally Facility Agreement and an Early Termination event had already occurred; (2) concealed that Bold Ally was free to exercise the Early Termination Provision and seize the VNET shares Sheng Chen had pledged as collateral; (3) concealed that the seizure of those shares would trigger Change of Control clauses embedded in VNET's $850 million outstanding convertible bonds and domestic loans, a deficiency so serious that it threatened to shut down VNET; and (4) concealed that Sheng Chen had filed a doctored version of the Facility Agreement that obscured the $8.50 Early Termination trigger price and the Event of Default clause. *See* Am. Compl., ECF No. 34, ¶¶ 62-97.

### II. Procedural History

This Action was filed on December 26, 2023. *See* Compl. Following the filing of the initial complaint, plaintiffs Michael Semerak and Wong Tan filed motions to be appointed lead plaintiffs and for approval of lead counsel. *See* Semerak's Mot. for Appointment as Lead Pl., ECF No. 12; Tan's Mot. for Appointment as Lead Pl., ECF No. 15. On March 13, 2024, after Mr. Semerak withdrew his motion, the Court granted Tan's motion and appointed him as Lead Plaintiff

and Pomerantz LLP as Lead Counsel. *See* Semerak's Notice of Withdrawal, ECF No. 19; Order Granting Appointment of Lead Pl., ECF No. 20.

On May 20, 2024, after a thorough factual investigation and engagement of a damages expert, Lead Plaintiff Wong filed a Consolidated Amended Class Action Complaint, which Mr. Semerak joined as an additional named Plaintiff (the "Amended Complaint"), asserting claims under Sections 10(b) and 20(a) of the Exchange Act. ECF No. 34. Thereafter, on July 19, 2024, Defendants moved to dismiss, Mot. to Dismiss, ECF No. 36, which Plaintiffs opposed on September 3, 2024, Pls.' Opp'n to Defs.' Mot. To Dismiss, ECF No. 39. Defendants' motion was fully briefed on October 3, 2024, Reply Mem. of Law in Supp. of Mot., ECF No. 40, and in an Opinion and Order dated September 15, 2025, the Court granted in part and denied in part Defendants' motion to dismiss. Op. and Order, ECF No. 43.

On November 13, 2025, Defendants filed their Answers, ECF Nos. 50-54, and on November 17, 2025, the Parties exchanged Rule 26(a)(1) initial disclosures, *see* Mem. in Supp. of Mot. for Preliminary Approval at 2, ECF No. 65. Thereafter, the Parties proceeded to discovery. Plaintiffs issued thorough discovery requests to Defendants and subpoenas to relevant third parties. Plaintiffs also moved for and obtained the issuance of a Letter Rogatory for discovery from a company incorporated in the Cayman Islands. *See* Order, ECF No. 61.

On January 9, 2026, the Parties participated in an all-day, in-person mediation before Jed Melnick, an experienced mediator familiar with securities class actions. While the mediation did not initially resolve the Action, the Parties subsequently engaged in follow-up negotiations and ultimately accepted a mediator's proposal to settle all claims in this Action for the Settlement Amount.

On April 3, 2026, Plaintiffs filed their motion for preliminary approval of the Settlement, ECF No. 64, which the Court subsequently granted on May 5, 2026, *see* Preliminary Approval

Order. Plaintiffs now move for final approval of the Settlement. The settlement class is defined as follows: "all persons and entities that purchased or otherwise acquired VNET American Depositary Shares between March 23, 2022 and February 17, 2023, both dates inclusive ("Class Period")." *Id*. at ¶ 3 (the "Settlement Class").

In accordance with the Preliminary Approval Order, Counsel instructed Strategic Claims Services ("SCS"), the Court-approved Claims Administrator for the Settlement, to: (1) email and mail copies of the Court-approved Postcard Notice, postage prepaid, to potential Class Members and nominees; (2) e-mail potential Class Members a link to both the Notice and the Claim Form on the settlement website; and (3) publish the Summary Notice in accordance with the Preliminary Approval Order (i.e., via Globe Newswire). All Notices described the Settlement, the lawsuit, and the rights of Class Members to: (a) participate in the Settlement; (b) object to any aspect of the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; or (c) exclude themselves from the Class. *See* Decl. of Christopher P.T. Tourek ¶ 42 ("Tourek Decl."), ECF No. 71.

On May 22, 2026, SCS established a webpage on its website for the Settlement at www.strategicclaims.net/VNET/. The website contains the case-related deadlines; an online claim filing link; the downloadable important case documents such as the Notice and Claim Form, the Postcard Notice, the Preliminary Approval Order, and the Stipulation; and the representative filers section with the letter to nominees, electronic filing instructions, and the electronic filing template. *See id.* ¶ 44; Decl. of Josephine Bravata ¶ 12 ("Bravata Decl."), ECF No. 71-3.

SCS disseminated 6,217 copies of the Postcard Notice to potential Class Members and nominees in accordance with the Preliminary Approval Order and e-mailed an additional 9,147 potential Class Members to provide them with the Court-approved Notice and Claim link, including to brokers and nominees contained in SCS's master mailing list. *See* Bravata Decl. ¶¶

3-9. In accordance with the Preliminary Approval Order, on June 10, 2026, SCS caused the Summary Notice to be published via Globe Newswire. *Id*. at ¶ 10.

To date, through direct mailings, mailings to brokers and nominees, and e-mails, SCS has sent at least 15,364 claim forms to potential Class Members and received 51 Proofs of Claim submitted by potential Class Members indicating their support of and desire to participate in the Settlement. *Id*. ¶¶ 8, 15. Of the 6,217 Postcard Notices mailed, 165 Postcard Notices were returned as undeliverable. Of these, the United States Postal Service provided a forwarding address for 13, and SCS immediately mailed another Postcard Notice to the updated addresses. The remaining 152 Postcard Notices returned as undeliverable were "skip-traced" to obtain updated addresses, and 25 were re-mailed to updated addresses. *Id.* ¶ 9.

## DISCUSSION

For the reasons set forth below, the Court finds the Settlement to be fair, reasonable and adequate, satisfying the factors articulated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and Federal Rule of Civil Procedure 23(e)(2).

### I. Motion for Final Approval of Class Action Settlement

#### A. *Grinnell* Factors

To evaluate the substantive fairness of a settlement, the Second Circuit sets forth nine factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.[1]

The Settlement here satisfies the *Grinnell* factors. First, Lead Counsel has considered the complexity and expense of prolonged litigation and has been spared the work and risk associated with conducting extensive discovery, surviving a motion for summary judgment, and prevailing at trial. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("Because Plaintiffs' ability to establish the liability of Defendants is far from certain, this factor weighs in favor of settlement approval."); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013) (emphasizing the "substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (establishing loss-causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s].").

Second, the reaction of the class to the Settlement is extremely positive. As Lead Counsel noted in its papers and at the Fairness Hearing, there are no objections and no requests for exclusion from the class. "[T]the absence of objections may itself be taken as evidencing the fairness of the settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *5-6 (S.D.N.Y. May 9, 2014) (collecting cases).

Third, Lead Counsel and Lead Plaintiff have conducted a thorough investigation of the strengths and weaknesses of the claims and determined that a successful verdict on all claims could result in aggregated damages to the Class as high as $85.6 million, using an 80/20 multi-trader model. The Settlement thus represents 6.86% of the estimated maximum likely recovery, on the

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

higher end of the range courts recognize as common in comparable securities class actions. *See*, *e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[A]verage settlement amounts in securities fraud class actions … have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (noting that a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

Finally, "while it is possible Defendants could withstand a greater judgment, even if they could, it does not necessarily preclude a finding that the settlement is fair." *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *11 (S.D.N.Y. Dec. 13, 2024). A defendant is not required to "empty its coffers before a settlement can be found adequate." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011).

**B. Rule 23(e)**

Rule 23(e)(2) enumerates four factors that courts should consider, namely whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class was adequate; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). For substantially the same reasons as discussed above, these factors are also satisfied. The Settlement was reached through arm's-length negotiation, involving one mediation and subsequent negotiations with a highly regarded mediator, Jed Melnick, whose involvement demonstrates that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (explaining that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *6 (E.D.N.Y. July 19, 2023) ("[S]everal

courts in this circuit have held that [Jed] Melnick's involvement has supported a finding that settlement negotiations were at arm's length.") (collecting cases). In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Tourek Decl. ¶ 72; Exs. 4-C, 5 to Tourek Decl., ECF Nos. 71-4, 71-5; *see also Lyons v. Marrud, Inc.*, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972) (noting "[e]xperienced and competent counsel"). The efforts of Plaintiffs' Counsel secured a Settlement that provides substantial benefits to the Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Additionally, as is standard in securities class actions, the parties have entered into a confidential Supplemental Agreement that provides Defendants with the opportunity to terminate the Settlement if a certain number of class members meeting certain criteria exclude themselves from the class. *See* ECF No. 66-1 at ¶ 42. Finally, as delineated in Lead Plaintiff's plan of allocation, Settlement Class members are treated equally and will be entitled to recover on a pro rata basis based on the size of their losses. Tourek Decl. ¶¶ 49-58.

Accordingly, the Court finds the Settlement is fair and satisfies both the *Grinnell* factors and Rule 23(e)(2).

## II. Lead Counsel's Motion for Attorneys' Fees, Costs, and an Award to Lead Plaintiff

### A. Attorneys' Fees in the Amount of 33 1/3% of the Settlement Fund

Lead Counsel requests attorneys' fees in the amount of 33 1/3% of the gross Settlement fund, plus interest. Fees Mot. at 1. Defendants take no position on this request. Lead Counsel attest that they have devoted, in aggregate, 1,266.3 hours in the prosecution of this matter, with a lodestar amount of $1,062,070.25. Tourek Decl. ¶¶ 65-69. The Court has reviewed Lead Counsel's contemporaneous billing records comprising the lodestar calculation amount, and finds

Lead Counsel's billing entries to be reasonable and appropriate. The requested fee of 33 1/3% of the $5.875 million Settlement yields a lodestar multiplier of 1.84. "In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (collecting cases); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six"); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (approving attorneys' fees equal to one-third of the $5.25 million settlement with a lodestar multiplier of 3.96); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024) (approving attorneys' fees equal to one-third of the $6.375 million settlement with a lodestar multiplier of 2.35); *In re Barclays PLC Sec. Litig.*, 2025 WL 842939, at *1 (S.D.N.Y. Mar. 18, 2025) (awarding fees with a lodestar multiplier of 3.18); *In re Luckin Coffee Inc. Sec. Litig.*, 2022 WL 22853339, at *2 (S.D.N.Y. July 22, 2022) (awarding fees with a lodestar multiplier of 4.6).

In *Goldberger v. Integrated Resources, Inc.*, the Second Circuit identified several factors in assessing a reasonable fee award:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

209 F.3d 43, 50 (2d Cir. 2000). Citing the same facts referenced in the preceding sections, Lead Counsel asserts that all *Goldberger* factors weigh in favor of the requested fee award. Fees Mot. at 7-18. Lead Counsel expended approximately 1,266 hours on this litigation and obtained a successful outcome for Lead Plaintiff and all those similarly situated. *See* Tourek Decl. ¶ 66. These hours included a diligent investigation into Plaintiffs' claims and survival of a motion to dismiss. Lead Counsel also assumed risk of non-payment with this case, given the contingency

arrangement and the risks associated with this litigation. *Id.* ¶ 8. Lead Counsel was also opposed by able and highly experienced attorneys from Skadden, Arps, Slate, Meagher & Flom LLP. *Id.* ¶ 73. Despite experienced and highly qualified opposing counsel, Lead Counsel was able to obtain a positive settlement, both in terms of the amount of recovery and response to the settlement. As noted above, there are no objections to this settlement, and no class members have requested exclusion. Tourek Decl. ¶¶ 45-46. Accordingly, due to the risk factors associated with this case and the lodestar cross-check, the Court finds a fee award of 33 1/3% of the Settlement Fund to be reasonable.

**B. Reimbursement of $56,647.20 of Costs to Lead Counsel**

Lead Counsel requests reimbursement of costs in the amount of $56,647.20. Tourek Decl. ¶ 80. The Second Circuit has held that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by an hourly-billed client. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 238 (2d Cir. 1987); Fed. R. Civ. P. 23(h). A large majority of the expenses were for experts, private investigators, and mediation—expenses that were essential to the successful result of the action and that other courts have found to be "reasonably expended and [suitable to] be reimbursed." *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (approving reimbursement of the plaintiff counsel's expenses, a majority of which were "for outside investigators, financial consultants, and the mediator"). Other out-of-pocket expenses were also reasonable, of the type traditionally billed, and should be reimbursed. *See Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *11 (E.D.N.Y. Apr. 11, 2014) (approving the reimbursement of expenses for "online legal research, copying costs, postage, court filing fees, … private investigator, and mediation fees."). Lead Counsel also notes that class members were apprised that costs may be up to $100,000, and no objections have been filed. *See* Ex. A-1 to Decl. of Christopher P.T. Tourek in Supp. of Mot. at 9, ECF No. 66-3. Accordingly,

the Court finds that these costs are reasonable and Lead Counsel may be reimbursed for $56,647.20 in costs.

### C. Compensatory Awards to Plaintiffs

Plaintiffs also seek a compensatory award of $15,000 to Lead Plaintiff Tan and $10,000 to additional named Plaintiff Semerak. Tourek Decl. ¶ 89. The Private Securities Litigation Reform Act ("PSLRA") permits lead plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. § 78u4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. at 165. Plaintiffs and Lead Counsel attest that Plaintiffs reviewed case materials, conferred more than a dozen times with counsel about case developments, consulted with counsel about the settlement, and reviewed and authorized settlement proposals. *See* Tourek Decl. ¶ 89; Declaration of Wong Tan ¶¶ 1-3, ECF No. 71-1; Declaration of Michael Semerak ¶¶ 1-3, ECF No. 71-2. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009); *Martinek v. Amtrust Financial Serv., Inc.*, No. 19-cv-8030 (KPF), 2022 WL 16960903 at *1 (S.D.N.Y. Nov. 16, 2022) (awarding lead plaintiff a compensatory award of $15,000); *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *1 (S.D.N.Y. Nov. 30, 2021) (awarding lead plaintiff a compensatory award of $7,500). To compensate Lead Plaintiff Tan and additional named Plaintiff Semerak for the extra time and effort spent bringing this class action to its conclusion, the Court finds that relatively modest awards of $15,000 and $10,000, respectively, are reasonable. Accordingly, the requests for compensatory awards are **GRANTED**.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for Attorneys' Fees are **GRANTED**.

SO ORDERED.

Dated: October 2, 2026
New York, New York

DALE E. HO
United States District Judge